### Terry *v.* Tubman.

1. Where the charter of a bank contained a provision binding the individual property of its stockholders for the ultimate redemption of its bills in proportion to the number of shares held by them respectively, the liability of the stockholders arises when the bank refuses or ceases to redeem and is notoriously and continuously insolvent.
2. Such insolvency having occurred prior to June 1, 1865, an action against a stockholder, not commenced by Jan. 1, 1870, is barred by the Statute of Limitations of the State of Georgia of March 16, 1869.

ERROR to the Circuit Court of the United States for the Southern District of Georgia.

*Mr. Harvey Terry* for the plaintiff in error.

*Mr. William H. Hull, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

The plaintiff, a citizen of Georgia, brings his action to recover from Mrs. Tubman the sum of $5,400. He alleges that he holds the circulating notes of the Bank of Augusta, Ga., to that amount; and that the defendant was, in June, 1862, and thenceforth, a holder of three hundred and seven shares of the stock of that bank, of the nominal value of $100 per share.

The Bank of Augusta was chartered Dec. 27, 1845, and its charter contained the following provision : —

" SECT. 3. That the individual property of the stockholders in said bank shall be bound for the ultimate redemption of the bills issued by said bank in proportion to the number of shares held by them respectively ; and, in case of a failure of said bank, all transfers of stock made within six months prior to a failure or refusal

on the part of said bank to redeem its liabilities in specie when required shall be void, and the private property of the individual or individuals transferring said stock shall be liable for the redemption of the bills of said bank, as above stated."

The defendant pleaded the Statute of Limitations, alleging that all of the bank-notes sued on were issued by the Augusta bank prior to June 1, 1865; and that, before that date, the bank had become insolvent, unable to meet its liabilities, had voluntarily stopped payment and ceased to do business, and so continued down to the time of the plea. To this plea the plaintiff demurred. The Circuit Court rendered judgment for the defendant on this plea, from which the plaintiff brings his writ of error to this court.

The Statute of Limitations of the State of Georgia was passed on the 16th March, 1869, and is as follows, so far as this action is concerned; viz.: —

"SECT. 3. And be it further enacted, That all actions on bonds or other instruments under seal, and all suits for the enforcement of rights accruing to individuals or corporations under the statutes or acts of incorporation, or in any way by operation of law, which accrued prior to 1st June, 1865, not now barred, shall be brought by 1st January, 1870, or the right of the party, plaintiff or claimant, and all right of action for its enforcement, shall be for ever barred.

"SECT. 6. That all other actions on contracts, express or implied, or upon any debt or liability whatsoever due the public, or a corporation, or a private individual or individuals, which accrued prior to the 1st June, 1865, and are not now barred, shall be brought by 1st January, 1870, or both the right and the right of action to enforce it shall be for ever barred. All limitations hereinbefore expressed shall apply as well to courts of equity as courts of law; and the limitations shall take effect in all cases mentioned in this act, whether the right of action had actually accrued prior to the 1st June, 1865, or was then only inchoate and imperfect, if the contract or liability was then in existence."

The plea demurred to alleges, and it is to be here assumed to be true, that the bank-notes held by the plaintiff had been issued by the bank prior to June 1, 1865, — the time specified in the limitation act just quoted. It is further alleged, and to be taken as true, that, prior to that time, the bank had become

notoriously insolvent, unable to meet its liabilities, and had ceased to do business.

The question is, whether the right of action now sought to be enforced had, on or before June 1, 1865, by means of these facts, accrued to the plaintiff. If it had, the present action is barred by the statute; for it can hardly be contended that this is not one of the actions embraced within the terms of the statute.

The plaintiff insists that no cause of action against the stockholder existed on the 1st of June, 1865, and not until the bank had made its assignment in 1866, its affairs had been administered, and a demand of payment of the bills had been made upon the bank, and had been refused. His fourth point is this: —

" 4th, That the liability of said defendant stockholder (had not attached, and did not attach, under said charter) to pay said bank bills before the assignment of said bank and the assets of said bank had been administered and applied to payment of its debts, and did not attach until demand for payment was made on said bank bills; and, therefore, said action did not accrue before the first day of June, 1865, but accrued since the assignment of said bank, and the administration of the assets, establishing the ultimate liability of said stockholders, and since the breach of contract to pay on demand, — to wit, on the day of commencement of this suit."

In this point the plaintiff alleges that the defendant's liability did attach when the assets of the bank had been administered and demand of payment made upon the bank, and that the defendant was not liable until that time.

The facts upon which he claims the benefit of this legal result he alleges in his complaint as follows: —

" And your petitioner avers that the said president, directors, and company of the Bank of Augusta afterwards — to wit, on the sixth day of January, A. D. 1866 — assigned and conveyed, for the benefit of its creditors, all of its property, both real and personal, its choses in action, claims and demands of every kind whatever, for the payment of its debts, in redemption of its bills, and so far as it could do so by its own act, and for all the purposes of the payment of its debts in the enforcement of the collection thereof, by suit or otherwise, and for the purpose of its creation, has become

and is a dissolved corporation; that it has no place of business, rendering a demand for payment of said bills and a suit against said corporation wholly futile and useless."

There is in the complaint no allegation that payment of the bills has ever been demanded of the bank; but presentment for payment is excused on the ground that the condition of the bank rendered a demand useless. There is no averment that a judgment had been obtained against the bank, or that a suit had been commenced upon the notes. It is excused on the ground that it had assigned all of its property, and was substantially dissolved.

There is no averment that its assets had been administered and applied to the payment of its debts in any other manner than that it was insolvent, and had made an assignment of its property.

The plaintiff's allegations fall far short of what, in his points, he insists is necessary to constitute a cause of action.

The concurrence of the facts alleged in the complaint and in the manner indicated brings into operation, as he insists, the provision of the charter that the individual property of the defendant is bound for the redemption of the bills of the bank, and authorizes the present suit against the defendant.

Upon the theory of the complaint before us, the ultimate redemption, for which the property of the stockholder is by statute made liable, is not that amount or proportion remaining after the assets of the bank have been applied, so far as they will go, in payment of the bills; for there is no averment that the trust under the assignment has been closed, or that a large proportion of the amount due upon the bills will not be paid from that source. The plaintiff, in his present suit, insists that the liability of the defendant has accrued to him for the reasons, 1st, That the bank did, in 1866, assign all of its property for the payment of its debts; 2d, That thereby, for all purposes of the payment of its debts, it has ceased to exist as a corporation; and, 3d, That a demand of payment and a suit against the bank for the recovery of the bills would be useless. These facts create a liability, he insists, which justify a suit against the defendant commenced in 1872. If they do not, he shows no cause of action in his complaint.

He has, however, demurred to the defendant's plea, which averred that the same facts existed, and justified the commencement of a suit on the first day of June, 1865; in other words, that his right of action had accrued prior to June 1, 1865, and that the same is barred by the statute quoted.

Thus, when the plaintiff avers that the bank made an assignment of all its property, and thereby ceased to exist as a corporation, the defendant makes an equivalent averment when he alleges that before the first day of June, 1865, the bank had notoriously stopped payment and ceased to transact business, and has thenceforth so continued. When the plaintiff alleges that for the reasons stated a demand upon the bank for payment, or a suit against it, would be useless, the defendant makes an equivalent averment when he alleges that on the first day of June, 1865, the bank " had become notoriously insolvent, and unable to meet its liabilities."

It seems to be quite clear that the same allegations made by the plaintiff to show that he had a cause of action when he brought this suit in 1872 are found in the plea he has demurred to, alleging that the cause of action was in existence on the first day of June, 1865. If his complaint is good, the plea is good; if the plea is bad, the complaint is bad.

A demurrer seeks the first fault in pleading, and it is with the plaintiff that the first error exists, if error there be.

We are of the opinion, also, that the facts alleged in the plea are sufficient to make it a good plea; in other words, that the cause of action, so far as there is a separate and distinct right of action in favor of each bill-holder, was in force on the 1st of June, 1865.

We are of the opinion that it is not necessary first to exhaust the assets of the bank by legal proceeding. The case is not so much like that of the guaranty of the " collection " of a debt, where the previous proceeding against the principal debtor is implied, as it is like a guaranty of " payment," where resort may be had at once to the guarantor without a previous proceeding against the principal. *Wadsworth* v. *Wadsworth*, 11 Wend. 100; 17 id. 103; 2 Pars. on Bills and Notes, pp. 142, 143.

A judgment and execution unsatisfied are evidence of insol-

vency, of inability to collect.   They are, however, evidence only ; and the fact may be established as well by other evidence, among other modes, by an assignment and continued suspension of business, or other notorious indications.   *Camden* v. *Doremis*, 3 How. 533 ; *Reynolds* v. *Douglas*, 12 Pet. 497 ; 2 Am. Lead. Cas. 134–136.

We think the liability for the "ultimate redemption" of the bills, if properly enforced, arises when the bank refuses or ceases to redeem, and is notoriously and continuously insolvent.

*Kimber* v. *Bank of Fulton*, 49 Ga. 419, is a decision directly in point by the Supreme Court of the State of Georgia.

The case of *Pollard* v. *Bailey*, 20 Wall. 520, is an authority against the maintenance of a separate action by one creditor who seeks to obtain his entire debt to the possible exclusion of others similarly situated.   The proper proceeding is in equity, where all the claims can be presented, all the liabilities of the stockholders ascertained, and a just distribution made.

*Judgment affirmed.*