## Terry *v.* Anderson.

1. An enactment reducing the time prescribed by the Statute of Limitations in force when the right of action accrued, is not unconstitutional, provided a reasonable time be given for the commencement of a suit before the bar takes effect.

2. This court concurs in opinion with the Supreme Court of Georgia that the time prescribed by the statute of that State, approved March 16, 1869, in which suits for the enforcement of rights which accrued prior to June 1, 1865, should be brought, is not so short or unreasonable, under the circumstances which led to its enactment, as to render it unconstitutional.

3 That statute may be set up as a valid bar to suits brought after Jan. 1, 1870, to enforce the individual liability of the stockholders of a bank in that State for the ultimate redemption of its bills which it ceased and failed to pay before June 1, 1865, or to recover the unpaid balance due on stock subscriptions at the time of such failure.

4. That balance is a debt to the bank, and inures to the benefit of all its creditors, while the individual liability for the redemption of its bills operates only in favor of the holders of them.

5. *Quære,* Can a creditor of a dissolved corporation, who has not recovered a judgment and exhausted his remedies at law, proceed in equity to subject choses in action to the payment of his demand ?

6. A statutory liability is as much the subject of remedial legislation as a liability by contract, unless the remedy enters into and forms a part of the obligation which the statute creates.

APPEAL from the Circuit Court of the United States for the Southern District of Georgia.

The Planters' Bank of the State of Georgia was incorporated by the legislature of that State, with a charter, providing that the stockholders, for the time being, shall " be pledged and bound, in proportion to the amount of the shares that each individual or company may hold in said bank, for the ultimate redemption of the bills or notes issued by or from said bank, during the time he, she, or they may hold such stock, in the same manner as in ordinary commercial cases, or in simple cases of debt."

The bank issued notes, some of which, in due course of trade, came into the possession of the complainants.

The bank failed to pay its notes in lawful money on the twentieth day of February, 1865, and nothing has been paid thereon, except as hereinafter stated.

On the 24th of May, 1866, the stockholders, being of opinion that the corporation was insolvent and unable to pay its debts,

ordered the board of directors to execute an assignment to Anderson and Mercer of the assets of the bank, for the purpose of equally distributing them among the creditors and billholders, and to surrender its charter to the governor of the State at such time as they might deem expedient.

On the 9th of July, 1866, the directors, in the name of the bank, assigned to Anderson and Mercer its property, both real and personal, and made said assignees their attorneys, in the name of the bank or otherwise, and, for the trusts created by the assignment, to ask, demand, recover, and receive of and from all and every person and persons all and singular the property and estate, goods, chattels, wares, merchandise, debts, choses in action, sum and sums of money and demands due and owing or belonging to said bank; . . . and, in default of delivery or payment in the premises, to sue, prosecute, and implead for the same, as they might see fit, &c.

The assignees accepted their trust on the same day, and soon after published a notice to all bill-holders and other persons having claims against the bank, to present them for liquidation.

On the 24th of December, 1869, Harvey Terry presented to the assignees for liquidation bills of the said bank, to the amount of $5,605.

Joshua and Thomas Green, in December of that year, presented to the assignees for liquidation bills to the amount of $5,791. Upon the bills so presented a dividend of twenty per cent was paid before Jan. 1, 1870.

Subsequently to the payment of this dividend, the assignees filed a bill in equity in the Superior Court of Chatham County, Georgia. McNish and other creditors of the bank, including the present complainants, were made defendants.

Their object was to obtain direction as to the mode of paying out the assets in their hands; and the court, July 14, 1871, adjudged, among other things, that there was due to Terry the sum of $5,605, less the dividend of twenty per cent received by him, and also the sum of $1,117, on bills on which he had received no dividend; that there was due to Joshua and to Thomas Green $5,791 on bills of the bank, less the dividend of twenty per cent previously paid thereon; and that the assignees

should pay the balance of the assets to all creditors named in the decree, in proportion to their respective dues.

In obedience to the decree, the assignees paid further dividends, making the whole amount so paid thirty and one-eighth per cent of the face value of the bills; and they were finally discharged June 30, 1873.

On the eighteenth day of March, 1869, the General Assembly of Georgia passed an act accepting the surrender of the charter of the bank.

The amount of bills outstanding at the time of the failure of the bank was $1,460,112. Of this amount, $207,448 were redeemed before the bank executed its deed of assignment.

Besides the bills so presented by said Terry, he is now the owner and holder of bills to the amount of $1,464, upon which no dividend has been paid.

The present bill of complaint was filed April 6, 1874, by him, Joshua Green, and Thomas Green, on behalf of themselves and others, against said Anderson and Mercer, the assignees and the other defendants who are stockholders of the bank. It sets forth the preceding facts, and alleges that at the time the bank failed its capital stock was not paid in in full, and that many of the stockholders had paid in only about eighty per cent of their subscription; that the right to sue for and recover the several balances due by them on their shares passed by the assignment of July 9, 1866, to the assignees, who had never collected them.

It prays that the stockholders be decreed to pay such sum upon each share of stock owned and held by them respectively as shall make up the full sum of $100, — its par value, — and such further sums respectively as may be found due, in order to pay the complainants' demands.

The defendant Anderson demurred generally.

The others demurred specially, upon the ground, 1, that the suit was barred by the Statute of Limitations; 2, that complainants, although defendants in the case of Anderson and Mercer against McNish and others, in the Superior Court for Chatham County, allege no reason or excuse for not seeking the aid of that court to require the assignees to collect the unpaid subscriptions due from the several stockholders, or why

the decree rendered in that cause should not be conclusive and binding upon them; 3, that the complainants do not allege that the defendants held any stock of the bank when the bills were issued; and, 4, that as to the bills amounting to $1,464, as to which Terry seeks judgment, the complaint does not set forth whether he became the holder of them before or after the final decree in that case, or why they were not presented for participation in the distribution of assets of the bank.

The demurrers were sustained and the bill was dismissed. The complainants thereupon brought the case here.

The Statute of Limitations of Georgia approved March 16, 1869, so far as it bears upon this case, is as follows: —

"SECTION 3. And be it further enacted, that all actions on bonds or other instruments under seal, and all suits for the enforcement of rights accruing to individuals or corporations, under the statute or acts of incorporation, or in any way by the operation of law which accrued prior to the 1st of June, 1865, not now barred, shall be brought by the 1st of January, 1870, or the right of the party, plaintiff or claimant, and all right of action for its enforcement, shall be for ever barred.

"SECT. 4. And be it further enacted, that all actions on promissory notes, bills of exchange, or other simple contracts in writing, and all actions on open accounts, or for the breach of any contract not under the hand of the party sought to be charged, or upon any implied assumpsit or undertaking, which accrued on a contract which was made prior to June 1, 1865, not now barred, shall be brought by the 1st of January next, after the passage of this act, or the right of the party, plaintiff or claimant, and all right of action for its enforcement shall be for ever barred."

"SECT. 6. And be it further enacted, that all other actions upon contracts, expressed or implied, or upon any debt or liability whatsoever, due the public, or a corporation, or a private individual or individuals, which accrued prior to the 1st of June, 1865, and are not now barred, shall be brought by the 1st of January, 1870, or both the right and the right of action to enforce it shall be for ever barred. All limitations hereinbefore expressed shall apply as well to courts of equity as courts of law, and the limitation shall take effect in all cases mentioned in this act, whether the right of action had actually accrued prior to the 1st of June, 1865, or was then only inchoate and imperfect, if the contract or liability was then in existence."

*Mr. Harvey Terry* and *Mr. William Stone* for the appellants;
*Mr. Henry R. Jackson,* contra.

MR. CHIEF JUSTICE WAITE delivered the opinion of the
court.

In *Terry* v. *Tubman,* 92 U. S. 156, we decided that where
the charter of a bank contained a provision binding the indi-
vidual property of its stockholders for the ultimate redemption
of its bills in proportion to the number of shares held by them
respectively, the liability of the stockholder arose when the
bank refused or ceased to redeem, and was notoriously insolvent;
and that when such insolvency occurred prior to June 1, 1865,
an action against a stockholder not commenced by Jan. 1, 1870,
was barred by the Statute of Limitations of Georgia of March
16, 1869. That act, as recited in its preamble, was passed on
account of the confusion that had " grown out of the distracted
condition of affairs during the late war," and substantially
barred suits upon all actions which accrued before the close of
the war, if not commenced by the first day of January, 1870.
This is a suit to enforce the liability of the stockholders of a
bank, under a provision of the charter similar to that considered
in *Terry* v. *Tubman;* and it is expressly averred in the bill that
the bank stopped payment on the 20th of February, 1865, and
never resumed. The affairs of the bank were closed up under
an assignment made July 9, 1866, the proceeds of which paid
only a small percentage upon its liabilities. The case is thus
brought directly within our former ruling; but it is insisted
that the act of 1869 is unconstitutional, because it impairs the
obligation under which the complainants claim, and, as that
question was not directly passed upon in the other case, we are
asked to consider it now. The argument is, that as the statute
of limitations in force when the liability of the defendants was
incurred did not bar an action until the expiration of twenty
years from the time the action accrued, a statute passed subse-
quently reducing the limitation impaired the contract, and was
consequently void.

This court has often decided that statutes of limitation af-
fecting existing rights are not unconstitutional, if a reasonable
time is given for the commencement of an action before the

bar takes effect. *Hawkins* v. *Barney*, 5 Pet. 451; *Jackson* v. *Lamphire*, 3 id. 280; *Sohn* v. *Waterson*, 17 Wall. 596; *Christmas* v. *Russell*, 5 id. 290; *Sturges* v. *Crowninshield*, 4 Wheat. 122. It is difficult to see why, if the legislature may prescribe a limitation where none existed before, it may not change one which has already been established. The parties to a contract have no more a vested interest in a particular limitation which has been fixed, than they have in an unrestricted right to sue. They have no more a vested interest in the time for the commencement of an action than they have in the form of the action to be commenced; and as to the forms of action or modes of remedy, it is well settled that the legislature may change them at its discretion, provided adequate means of enforcing the right remain.

In all such cases, the question is one of reasonableness; and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable. Of that the legislature is primarily the judge; and we cannot overrule the decision of that department of the government, unless a palpable error has been committed. In judging of that, we must place ourselves in the position of the legislators, and must measure the time of limitation in the midst of the circumstances which surrounded them, as nearly as possible; for what is reasonable in a particular case depends upon its particular facts.

Here, nine months and seventeen days were given to sue upon a cause of action which had already been running nearly four years or more. The third section of the statute is as follows: —

"That all actions on bonds or other instruments under seal, and all suits for the enforcement of rights accruing to individuals or corporations under the statute or acts of incorporation, or in any way by operation of law which accrued prior to the 1st of June, 1865, not now barred, shall be brought by the 1st of January, 1870, or the right of the party, plaintiff or claimant, and all right of action for its enforcement, shall be for ever barred."

The liability to be enforced in this case is that of a stockholder, under an act of incorporation, for the ultimate redemp-

tion of the bills of a bank swept away by the disasters of a civil war which had involved nearly all of the people of the State in heavy pecuniary misfortunes. Already the holders of such bills had had nearly four years within which to enforce their rights. Ever since the close of the war the bills had ceased to pass from hand to hand as money, and had become subjects of bargain and sale as merchandise. Both the original billholders and the stockholders had suffered from the same cause. The business interests of the entire people of the State had been overwhelmed by a calamity common to all. Society demanded that extraordinary efforts be made to get rid of old embarrassments, and permit a reorganization upon the basis of the new order of things. This clearly presented a case for legislative interference within the just influence of constitutional limitations. For this purpose the obligations of old contracts could not be impaired, but their prompt enforcement could be insisted upon or an abandonment claimed. That, as we think, has been done here, and no more. At any rate, there has not been such an abuse of legislative power as to justify judicial interference. As was said in *Jackson* v. *Lamphire, supra :* "The time and manner of their operation [statutes of limitation], the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend upon the sound discretion of the legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment."

The Supreme Court of Georgia, in *George* v. *Gardner,* 49 Ga. 441, held that the time prescribed in this act was not so short or unreasonable under the circumstances as to make it unconstitutional; and the Circuit Court of the United States for the Southern District of Georgia held to the same effect in *Samples* v. *The Bank,* 1 Woods, 523. We are satisfied with these conclusions. The circumstances under which the statute was passed seem to justify the action of the legislature. The time, though short, was sufficient to enable creditors to elect whether to enforce their claims or abandon them.

This disposes of the questions arising upon the individual liability of the stockholders under the charter. It still remains to consider the cases of the stockholders whose subscriptions

were not paid in full at the time of the failure of the bank. For this purpose, it is not necessary to decide whether this liability passed to the assignees under the assignment. If it did not, and the present complainants have the right to sue for it, their action is barred by the statute of 1869. It was a debt due the corporation June 1, 1865; and, by sect. 6 of that statute, all actions upon any debt or liability due a corporation, which accrued prior to that date and was not barred when the act was passed, must be brought by Jan. 1, 1870. The case of *Cherry* v. *Lamar*, decided by the Supreme Court of Georgia in January, 1877, is not, as we understand it, at all in conflict with this. There the charter of the bank made a call by the directors, and sixty days' notice of it to the stockholders, conditions precedent to the collection of unpaid stock subscriptions; and it was consequently held that the statute did not commence to run against such a liability until the requisite call had been made and notice given. Neither in this case nor in *Terry* v. *Tubman* does any such provision of the charter appear. For all that is shown in the record, the stockholders were liable to suit at any time for the recovery of the balance due from them.

These complainants are neither of them judgment creditors of the bank. In a suit instituted by the assignees to close up the assignment, they proved their claims, and the amount due them was found for the purposes of a dividend. The finding was sufficient for the purposes of distribution; but it has none of the characteristics of a judgment or decree, to be enforced as against any thing but the fund which the court was then administering.

We see nothing to take this case out of the operation of the decision in *Terry* v. *Tubman*, and the decree of the Circuit Court is therefore                                    *Affirmed.*

At a subsequent day of the term, a petition for rehearing was filed.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

In this petition it is suggested that the provision of the

charter of the Planters' Bank, in respect to the liability of subscribers to the capital stock for the payment of the balances due upon their subscriptions, is substantially the same as that passed upon in *Cherry* v. *Lamar*, and that consequently, under the ruling in that case, the Statute of Limitations is no bar to this action for the recovery of balances due. This does not appear either in the record or in the voluminous printed arguments filed at the hearing. If it was mentioned in the oral argument, it did not attract our attention.

But upon the facts as they are now stated the result will not be changed. The liability of the stockholders upon their unpaid subscriptions is that of debtors to the bank. *Ogilvie* v. *Knox Insurance Co. et al.*, 22 How. 380. Consequently the balances now in controversy passed to the assignees under the assignment, which was "of all the property, estate, credits, and assets of the" bank. The liability of a stockholder for his subscription is entirely different from that imposed by the charter "for the ultimate redemption of the bills" issued by the bank. The subscription inures to the benefit of all creditors, while the individual liability under the charter operates only in favor of billholders.

Since the debts due upon the subscriptions passed to the assignees, the appellants, being parties to the suit instituted by them to close their trust, had the right to insist that this part of the assets should be reduced to possession, and distributed before the trust was closed and the assignees were discharged.

Ordinarily, a creditor must put his demand into judgment against his debtor and exhaust his remedies at law before he can proceed in equity to subject choses in action to its payment. To this rule, however, there are some exceptions; and we are not prepared to say that a creditor of a dissolved corporation may not, under certain circumstances, claim to be exempted from its operation. If he can, however, it is upon the ground that the assets of the corporation constitute a trust fund which will be administered by a court of equity in the absence of a trustee; the principle being that equity will not permit a trust to fail for want of a trustee. But here there was a trustee invested with ample powers to collect and dispose of all the assets belonging to the alleged trust fund. In a suit to which

these appellants were parties one court of equity has found that this trustee has fully executed his trust, and that the fund is exhausted. That decree is a bar to any further proceeding in equity by them, as creditors of the bank before judgment, for the purpose of securing the administration of the same trust. If there are assets which the trustee did not reach, the appellants are remitted to their remedies, after judgment against the bank, to subject equitable assets to the payment of their demands. We have seen, in the former opinion filed, that they do not now occupy the position of judgment creditors.

The other questions presented by the petition for rehearing have already been sufficiently considered. A liability by statute is as much the subject of remedial legislation as a liability by contract, unless the remedy enters into and forms part of the obligation which the statute creates. Such, we think, is not the case here.                                 *Petition overruled.*

NOTE. — In *Terry* v. *Coskery*, error to the Circuit Court of the United States for the Southern District of Georgia, which was argued at the same time as was the preceding case by *Mr. Harvey Terry* and *Mr. William Stone* for the plaintiff in error, and by *Mr. W. H. Hull* for the defendant in error, MR. CHIEF JUSTICE WAITE, in delivering the opinion of the court, remarked: "There is nothing to distinguish this case in principle from that of *Terry* v. *Tubman*, 92 U. S. 156, and that of *Terry* v. *Anderson, supra*, p. 628."             *Judgment affirmed.*