### BIRD & CO. v. CALVERT.

1. Where suit was brought against a corporation and its individual members, all of whom (except one) answered admitting liability, an order of reference and subsequent proceedings thereunder will not be set aside as to the corporation and these non-resisting defendants at the instance of the one excepted stockholder, whose time for answering had not expired when such order was taken, and who had not then answered.

2. In action by a creditor in the Court of Equity to subject property beyond the reach of legal process to the payment of his demand, are judgment and execution unsatisfied the only sufficient evidence to prove insolvency, and so give jurisdiction to the court?

3. Under a charter which provides that every stockholder shall be individually liable to the creditors to the extent of five per cent. upon his stock subscribed, the liability of the stockholders individually is primary, and may be enforced by action before judgment had against the corporation and return of *nulla bona.*

Before Hudson, J., Charleston, June, 1884.

The opinion fully states the case.

*Messrs. McCrady, Sons & Bacot,* for appellant.

*Messrs. Smythe & Lee,* contra.

March 3, 1885.   The opinion of the court was delivered by

Mr. Justice McGowan.   The defendant, Wm. H. Calvert, was a member of the company incorporated in 1881, under the style and name of ''The Merchants' and Planters' Transportation Company,'' the charter of which provided that each stockholder, besides his stock proper, shall be jointly and severally liable to the creditors thereof ''in an amount not exceeding *five per cent.* of the par value of the share or shares held by him,'' &c.

The plaintiffs, claiming to be creditors of the corporation in the sum of $74.91, instituted this action in behalf of themselves and all other creditors of the corporation.   The complaint alleged that the steamer ''Clarendon,'' which belonged to the company, ''had been sold at a price inadequate to satisfy the debts, and

that they had no property whatever and were utterly insolvent." A list of the stockholders was attached, with the number of the shares of each, among whom was the defendant, W. H. Calvert, represented as having subscribed two shares—two hundred dollars, one hundred of which was still due and unpaid. Alleging that their debt was payable, and the action brought within the times respectively required by the charter, the plaintiffs prayed judgment as follows: First, against the corporation for the amount of the debt; second, against the stockholder, W. H. Calvert, for one hundred dollars, the unpaid portion of his original subscription; third, against each of the stockholders for five per cent. upon the value of the shares held by the corporators respectively; and fourth, for the appointment of a receiver, general relief, &c.

The company and all its stockholders were summoned, and the corporation as such and most of its members (excepting Calvert) answered, admitting the allegations of the complaint, and the individual liability of each stockholder to pay five per cent. upon the amount of his stock, according to the terms of the charter. On March 11, 1884, Judge Kershaw referred the matter to Master Sass, with instructions to collect the five per cent. from all the stockholders who had answered, and, after paying the costs and a reasonable counsel fee to plaintiffs' attorney, to hold the remainder of the fund for the payment of the debts, with leave to call in the creditors, hold references, and report any special matter. After this, on March 14, Calvert's attorney gave notice of an appearance, and further time to answer being extended to him, he filed his answer on April 10, denying that he was in default in paying his original subscription, which, as he alleged, was only one share, one hundred dollars, and had been paid in full. He further insisted that, as the plaintiffs had not before commencing action obtained judgment against the corporation and exhausted their legal remedies, they had no right to invoke the equitable jurisdiction of the court to enforce the collection of the five per cent. against individual stockholders, and that all the orders previously passed were without authority, and the complaint should be dismissed as to all parties for want of jurisdiction.

On June 20, Master Sass filed his report under Judge Kershaw's order, stating that the stockholders (except Calvert) had paid the assessment upon their stock, that he had taxed the costs, fixed the fee, &c., and recommending that the remainder of the fund should be paid *pro rata* to the creditors. This report was confirmed by Judge Hudson, who ordered the money paid out as recommended, but at the same time reserved all the rights of Calvert, who was heard the next day upon his answer. The judge referred the issues of fact raised by the answer to the master, and overruled his plea to the jurisdiction, assigning as his reasons: "1. Because the answer of the defendant, W. H. Calvert, through indulgence of plaintiffs' counsel, has been filed at a late day, and at a time when it would be inequitable to interfere with the process of winding up the affairs of the corporation begun by this court. Had the defence been interposed at the outset, and had the other stockholders joined him therein, the grounds of defence would have deserved serious consideration, and might possibly have been fatal to the complaint, although I do not hold that the action might not have been sustained. 2. The allegation of utter insolvency is positively made in the complaint, and as unqualifiedly admitted by the defendant company, and by every stockholder who has answered except W. H. Calvert, and he does not deny it, but merely declines to admit it. 3. Because this clear evidence of insolvency is sufficient to justify this court in appointing a receiver of the assets of the corporation. This has been practically done by Judge Kershaw in the order directing the master to perform certain offices usually devolved on a receiver. Under these circumstances, and after this court has, at the instance of all save Mr. Calvert, assumed jurisdiction and entered upon the administration of the affairs of the corporation, it would be trifling with important rights and interests to dismiss the complaint at the instance of a single stockholder, who does not pretend that the insolvency could here be more clearly established had a judgment been first recovered against the company and an effort made to enforce it."

From this order Calvert appeals upon the following grounds: "1. Because the order of reference of March 11, 1884, should not have been granted, and should now be set aside, inasmuch as

it was taken before the expiration of the twenty days allowed by law to answer or demur, and without notice to the defendant, appellant, and without his consent then or since, and also all subsequent proceedings under said order of reference, including the master's report and the order of June 19, 1884, confirming the same. 2. Because in the order of June 20, 1884, his honor, Judge Hudson, erred in overruling the plea to the jurisdiction set up by the defendant, appellant, in his answer, and in sustaining the jurisdiction of the court over the action, certainly as to this defendant, appellant."

Under the code, different causes of action may be united in the same complaint. The plaintiffs sued the corporation, and at the same time charging that the artificial entity known as the corporation owned no property and was utterly insolvent, asked further relief against the individual stockholders under the charter. The corporation as such was regularly made a party by service upon its officers, and answered admitting the debt, and therefore the judgment against it was regular and bound all the members as corporators, whether they individually answered or not. The question as to further liability for the five per cent. on stock was personal, which each stockholder could raise or not for himself as he saw fit. When most of the stockholders admitted the utter insolvency of the corporation and their liability for the assessment, and actually paid it under orders of the court, we do not think those orders should be set aside only for the reason that one of their number had not then answered, and afterwards answered, objecting to the jurisdiction of the court. Upon that subject he had the right to speak for himself, but not to make issues for others, who had the same right to speak for themselves. The court certainly had jurisdiction to render judgment against the corporation and all those stockholders who admitted the insolvency and their liability, and the orders made as to them must stand.

It is urged, however, that as to the five per cent. claimed by the creditors to be assessed on himself, Calvert's plea to the jurisdiction should have been sustained on the ground, as we understand it, that the proceeding to enforce its payment was in the nature of a proceeding in equity, a creditor's bill, which will not

be entertained, except in cases where there is no adequate remedy at law, and that was not properly shown here. That is to say, that this case belongs to that class where some voidable obstacle obstructs legal process, removable only by equity, affording a remedy in aid of the law and secondary in its character, which supplementary aid will be withheld *inter vivos* until all legal means have been exhausted, and this fact can only be made to appear by proof of a judgment recovered and a return of *nulla bona* on the execution. In such cases it is not quite certain that proof of a judgment and unsatisfied execution will be inexorably required under all circumstances. They are undoubtedly the usual, and perhaps most satisfactory, evidence of the important fact of insolvency; but at last they are only evidence, and some cases of high authority hold that it is possible to prove insolvency by other satisfactory evidence. In this case insolvency was both alleged and proved, indeed admitted by the officers and most of the stockholders, and as a fact denied by none. *Pettus* v. *Smith*, 4 *Rich. Eq.*, 197; *Terry* v. *Tubman*, 92 *U. S.*, 160; *Case* v. *Beauregard*, 101 *U. S.*, 690.

But be that as it may, it seems to us clear that this is not a case belonging to the class above described, in which the aid of equity is requested to remove some obstacle in the way of legal process, and the performance of certain primary duties is required as an indispensable prerequisite to the exercise of such jurisdiction. On the contrary, there is here no obstacle in the way of enforcing an obligation which is purely statutory, a contract created by the accepted charter of the company, which is the law of the case, not only as to the measure of liability, but also as to the conditions of its enforcement. By the common law no liability attached to the stockholders of an incorporated company beyond their subscriptions to the capital stock. Creditors had no rights except against the artificial existence known as the corporation and its corporate property. But its property, including unpaid subscriptions, was held as a trust fund for creditors, who could, by showing that the corporation was insolvent, obtain the appointment of a receiver and enforce the payment of subscriptions. *Code*, § 265; *Clinkscales* v. *Pendleton Man. Co.*, 9 *S. C.*, 324.

The constitution of 1868 authorized an enlargement of the

liabilities of stockholders. Article XII., section 5, provides that "All general laws and special acts passed pursuant to this section shall make provision therein for fixing the personal liability of stockholders under proper limitations." The third section of the charter of this company, passed in 1881 (17 *Stat.*, 587), provides that each stockholder shall be individually liable for five per cent. upon his stock subscribed, and, differing in that regard from a number of other charters, attached no condition as to having a judgment and the return of *nulla bona* on the execution before the liability can be enforced. The terms are: "Sec. 3. Each stockholder in the said corporation shall be jointly and severally liable to the creditors thereof in an amount, besides the value of his share or shares therein, not exceeding five per cent. of the par value of the share or shares held by him, at the time the demand of the creditor was made; provided that such demand shall have been payable within one year; provided, also, that proceedings to hold such stockholders liable therefor shall be commenced within two years after such debt may have become due, and whilst he remains a stockholder therein, or within two years after he shall have ceased to be such stockholder," &c.

Without entering at length into the argument, it strikes us that this provision creates no liability secondary in its nature. It will be observed that regulations are made as to the time within which "proceedings to hold such stockholders liable" must be commenced; but nothing whatever is said as to any difference between stock and assessment, or, as to the latter, the necessity of having a prior judgment and execution. The individual liability of the stockholders is made as direct and unconditional for the five per cent. as for the subscribed stock itself. The words are, each stockholder shall be liable "in an amount, besides the value of his share or shares therein, not exceeding five per cent.," &c. The obligation in one sense may possibly be termed collateral, but we cannot see that in any sense it is secondary, and enforceable only after judgment and a return of *nulla bona* on the execution against the corporation. See *Thomp. Liab. Stock.*, §§ 34, 292, 321; *Johnston* v. *S. W. R. R. Bank*, 3 *Strob. Eq.*, 273; *Terry* v. *Martin*, 10 *S. C.*, 263; *Sullivan* v. *Sullivan*

*Man. Co.*, 14 *Id.*, 494, and 20 *S. C.*, 79 ; *Bank* v. *Bivingsville Cotton Man. Co.*, 10 Rich., 100.

The case last cited, of the Bivingsville Manufacturing Company, was an action against the stockholders, and no prior judgment had been obtained against the corporation, and the court, construing the provisions of the charter, said : "Their primary liability on contracts made by the corporation is in their character as partners, and no obligation is imposed by the act on creditors to exhaust the assets of the corporation, nor is there any condition which requires them to pursue it to insolvency before they shall commence their actions against them as general partners. In this respect the act differs from the statutory provisions of other states, which make the absolute liability of individual stockholders for debts due by the company depend upon its dissolution, or upon the return of an execution against the corporation unsatisfied. *Bank of Poughkeepsie* v. *Ibbotson*, 24 *Wend.*, 473 ; *Moss* v. *Oakley*, 2 *Hill* (*N. Y.*), 265." See, also, *Terry* v. *Tubman, supra.*

The judgment of this court is that the judgment of the Circuit Court be affirmed.