### R. E. DUVALL CO., Inc., v. WASHINGTON, BALTIMORE & ANNAPOLIS ELECTRIC R. CO. et al.

#### No. 1826.

District Court, D. Maryland.

July 9, 1936.

Tolles, Hogsett & Ginn, of Cleveland, Ohio, and Semmes, Bowen & Semmes, of Baltimore, Md., for Cleveland Trust Co.

Bartlett, Poe & Claggett, of Baltimore, Md., for first mortgage bondholders of B. & A. Short Line R. R. Co.

Venable, Baetjer & Howard, of Baltimore, Md., for Maryland Trust Co., and holders of Annapolis Short Line R. R. bonds.

Marbury, Gosnell & Williams, of Baltimore, Md., for receiver.

WILLIAM C. COLEMAN, District Judge.

The Washington, Baltimore & Annapolis Electric Railroad Company, herein called the W. B. & A., went into receivership in this court on January 27, 1931. The receivership was prolonged, largely by reason of the general economic depression, but in the summer of 1935, it having been found that the railroad could not be successfully reorganized and could no longer be operated except at a heavy loss, its property was directed by this court to be sold, and was sold, under foreclosure proceedings. As a result, the court auditor filed his report on December 17, 1935, showing a cash balance available for distribution to bondholders and general creditors of the company in the sum of $506,178.14, not including some additional funds to be retained in the hands of the receiver for contingent expenses. After allocating the amount so available for distribution to bondholders and general creditors in accordance with the liens on the property, there remained for distribution to general creditors the sum of $139,453.94. The auditor's report, which was ratified and confirmed subject to the usual right to file exceptions thereto, shows that the distribution of this sum should be at the rate of 1.1 per cent to all general creditors whose claims have been approved and who are entitled to share in the distribution, and among such general creditors, the auditor includes the trustees as the representatives of the holders of two issues of outstanding bonds of the so-called Annapolis Short Line Railroad Company, whose property was operated along with that of the W. B. & A., as one system; the amount due on these Short Line bonds, with interest, as shown by the auditor's report, totaling $2,110,326.84. The basis for allowing holders of these bonds thus to share in the pro rata distribution to general creditors is a guaranty, hereinafter more fully explained, by the W. B. & A., of the payment of the principal and interest of the bonds of these two Short Line issues. The Cleveland Trust Company, trustee for the W. B. & A. bondholders, has excepted to those portions of the auditor's report which recognize the claim of the Maryland Trust Company, trustee, and of the Fidelity Trust Company, trustee, acting on behalf of the Annapolis Short Line Railroad bondholders, as aforesaid. The grounds for such exception are stated to be as follows: (1) That there is no contractual relationship between the Short Line bondholders and the W. B. & A., and that, therefore, under Maryland law, neither the Short Line bondholders, nor the trustees on their behalf, have any valid claim against the W. B. & A.; (2) that even if the agreement dated February 13, 1921, be construed as a guaranty for the benefit of the Short Line bondholders, such guaranty is a conditional obligation under which such bondholders must first exhaust the security of the mortgages pursuant to which their bonds were issued; (3) that if the Short Line bondholders have any recourse against the W. B. & A., their remedy is in equity; their rights are derived from the Annapolis Short Line Railroad by subrogation, and as between that railroad and the W. B. & A., the mortgaged property is the primary fund for the payment of the debt; and (4) that apart from the fact that the W. B. & A. has no contractual obligation to pay the Short Line bondholders, the latter are secured creditors and cannot prove for the full amount of their claims with unpaid interest without deducting the value of their security, which they still continue to hold.

Argument was had on these exceptions in due course, and the questions now before the court for decision are, briefly stated, the following: First, whether the trustees of the two Short Line bond issues, or the bondholders represented respectively by them, are entitled to share in the funds in the W. B. & A. receivership available for distribution to general creditors; and, second, if they are so entitled, whether they should be allowed to receive dividends based on the full amount of their claims as allowed by the auditor; or whether there should be deducted from the face amount of their claims, the dividends which they have heretofore received, and, likewise, the value of the security held for their benefit under the respective bond issues.

The material facts are embodied in lengthy stipulations by the parties. Only the following summary need be given. The W. B. & A. placed a first mortgage on its entire system in March, 1911, to secure a bond issue of $7,500,000, of which $7,308,000 of bonds were issued. At that time, the Baltimore & Annapolis Short Line Railway Company, hereinafter called the Short Line, was a separate road running between

Annapolis and Shipley, Md., and its property was subject to a mortgage which had been executed in 1906 to the Fidelity Trust Company, trustee, to secure $1,000,000 40-year 5 per cent bonds, on behalf of the holders of which bonds this trustee is one of the present claimants under the auditor's report to which the exceptions have been filed. Since the W. B. & A.'s connection with Annapolis was originally via Annapolis Junction on its main line, which was a route much longer than over the Short Line via the village of Shipley, also located on the main line of the W. B. & A. between Washington and Baltimore, in February, 1921, the Short Line conveyed its property to the W. B. & A., but shortly prior thereto, that is, in January, 1921, an additional mortgage had been given by the Short Line upon its property to the Maryland Trust Company, trustee, to secure an issue of $732,000 15-year 7 per cent sinking fund bonds, so that when the W. B. & A. acquired the Short Line, it did so subject both to the mortgage to the Fidelity Trust Company, trustee, above referred to, and to this additional mortgage to the Maryland Trust Company, trustee. The terms of the agreement of transfer and consolidation contained the following covenant: "The Washington, Baltimore and Annapolis Electric Railroad Company covenants and agrees that it will guarantee the payment of the principal and interest of one million dollars ($1,000,000) face value of Baltimore & Annapolis Short Line Railroad Company 5%. Forty Year Gold Bonds, which are secured by deed of trust from the last mentioned Company to The Fidelity Trust Company as Trustee, dated August 6th, 1906, and that it will save, indemnify and hold harmless The Maryland Electric Railways Company [the successor, by virtue of a consolidation, to the Short Line] from any liability growing out of the execution of said Deed of Trust, and the bonds secured thereby, and that it will also guarantee the payment of the principal and interest of Seven hundred and thirty two thousand dollars ($732,000) face value of fifteen year Seven Per Cent Sinking Fund Bonds of the Annapolis Short Line Railroad Company, secured by deed of trust from said last mentioned Company to Maryland Trust Company, Trustee, dated January 1st, 1921, and that it will also guarantee payment of the principal and interest of the car trust bonds of the said Annapolis Short Line Railroad Company of the face value of two hundred and forty thousand dollars ($240,000) secured by an agreement

of lease to the said Annapolis Short Line Railroad Company from Maryland Trust Company, as Trustee, dated January 1st, 1921."

Thus it will be seen that by the above agreement the W. B. & A. guaranteed payment of the principal and interest of the $1,000,000 face value of the then outstanding first mortgage 5 per cent bonds of the Short Line secured by the deed of trust to the Fidelity Trust Company, trustee, dated August 6, 1906; also, payment of the principal and interest of $732,000 face value of the 15-year 7 per cent sinking fund bonds of the Short Line, secured by deed of trust to the Maryland Trust Company, trustee, dated January 21, 1921, and also payment of the principal and interest of the car trust bonds of the Short Line of the face value of $240,000, secured by an agreement or lease to the Short Line from the Maryland Trust Company, trustee, dated January 1, 1921. All interest that was paid from August 1, 1920, upon the $1,000,000 first mortgage 5 per cent bonds just referred to, was in fact paid by the W. B. & A. As a further part of this consolidation and transfer, the Fidelity Trust Company, trustee, released from the operation and lien of the mortgage pursuant to which those bonds were issued, all the property of the Short Line (which had become the Maryland Electric Railways Company, as the result of a consolidation), subject to that lien north of Shipley Station in Anne Arundel county, in exchange for a grant of the right to use the tracks and terminal facilities of the W. B. & A. from a point near Shipley Station into Baltimore, subject, however, to the prior lien of the W. B. & A.'s mortgage of 1911.

There was actually indorsed on $701,000 par value of the $1,000,000 first mortgage 5 per cent bonds of the Short Line, the above-quoted guaranty signed and sealed by the W. B. & A., of the principal and interest of these bonds; and the corresponding guaranty was likewise inserted in the 7 per cent bonds, signed and sealed by the W. B. & A. These latter bonds matured by acceleration in September, 1931; and the former likewise matured about the same time.

After the W. B. & A. was placed in receivership, the trustees under the two Short Line mortgages took no steps to foreclose them, but merely filed intervening petitions in the receivership proceeding, setting forth the liens of these mortgages and asking that all rights under them be preserved. When,

in the summer of 1935, the W. B. & A. properties were sold under foreclosure proceedings, and service between Washington, Baltimore, and Annapolis over its so-called main line and South Shore Line, was entirely discontinued, the owners of the Short Line concluded that it might be profitable to continue the operation of that line from Baltimore to Annapolis, via Shipley, as a separate system. As heretofore noted, the first mortgage bondholders of the W. B. & A. had only a junior lien on the Short Line properties, because of the two original Short Line mortgages which are the basis of the present controversy. This equity of the W. B. & A. bondholders was sold separately for the sum of $1,000 to representatives of the Short Line bondholders, and at the present time the Short Line is being operated, having secured a loan from the Baltimore & Ohio Railroad Company in the amount of $300,000, in order to effect the necessary improvements, etc.; this loan being secured by a pledge of the Short Line bonds.

It thus appears that a portion of the fund now available for distribution pursuant to the auditor's account, and which is affected by the exceptions now before the court, was created as a result of the sale of some assets acquired from the Short Line and from the earnings of the consolidated system which included the Short Line property. It is also true that part of the security of the Short Line bonds was taken away when the trustee of that issue, namely, the Fidelity Trust Company, released the tracks of the Short Line north of Shipley; and that the consideration for this release was the guaranty of the Short Line bonds by the W. B. & A., which is here under review, and the right of entrance over the W. B. & A. tracks to Baltimore. It is to be noted, however, that this latter consideration was not of any great value because subject to the lien of the W. B. & A. first mortgage, a foreclosure of which would destroy the right of entrance into Baltimore granted to the Short Line property.

It is conceded by the stipulation that any dividends that can be paid on the face amount of the Short Line bonds in this proceeding, and any other payments thereon from any other source, and the value of such security as is now behind these bonds, will, in all, be very much less than the total amount due thereon. It also appears that in 1933, prior to the foreclosure of its mortgage, the Cleveland Trust Company, trustee, accepted a 5 per cent distribution in this proceeding on the principal amount of the W. B. & A. bonds outstanding with interest, without any deductions whatsoever for security or otherwise; that in the year 1935, it realized for its bondholders $772,005.17 from the sale of mortgaged property; and that as a result of its claim in this proceeding for the principal amount of these bonds outstanding with interest which was made without any deduction for security or otherwise, it has received and accepted, pursuant to the auditor's report of December 17, 1935, on behalf of it bondholders, the dividend of 1.1 per cent on the principal amount of such bonds outstanding, with interest, without any deduction for security or otherwise.

The exceptions of the Cleveland Trust Company, trustee, are as already explained, based upon four separate grounds, all of which may be summarized briefly and consolidated in the following statement: That the Short Line bondholders have no claim at law against the W. B. & A., because no contractual relationship exists between such bondholders and the W. B. & A.; that the rights, if any, which such bondholders have against the W. B. & A. under the latter's guaranty can only be asserted after such bondholders have exhausted the security of their own mortgages; and that in any event, such bondholders, being secured creditors, cannot prove for the full amount of their bonds and unpaid interest without deducting the value of the security which they continue to hold.

We believe that the position of the Cleveland Trust Company, trustee, is totally untenable from whatever angle it is approached, for the following reasons, which are a complete answer to each of the four grounds of opposition which the Cleveland Trust Company, trustee, has raised: First, the guaranty of the W. B. & A. is an absolute guaranty of payment and not merely of collection. Such interpretation is unavoidable from the express phraseology of the covenant in the agreement of February 18th, 1921, which has heretofore been quoted. See Pennsylvania Steel Co. v. New York City Railway Co. (C.C.A.) 198 F. 721; Wood Reaping & Mowing Machine Co. v. Ascher, 103 Md. 133, 62 A. 1023, 115 Am. St.Rep. 343; compare Terry v. Tubman, 92 U.S. 156, 160, 23 L.Ed. 537. Thus, we need not consider whether the case of the bondholders is strengthened by virtue of the indorsement of the guaranty on most of the bonds. Independently of any such indorse-

ment, it became, and remained from its creation, unconditional. Thus, we are not concerned with what may be the rule as to a creditor's duty to proceed against his security before claiming against the principal obligor, when no guarantor is involved.

■ Second, the interpretation and effect to be given such guaranty are essentially matters that this court must determine consistent with the principles that have been announced by the Supreme Court of the United States rather than by strict adherence to any rule of the common law of Maryland. See Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865; Johnson v. Charles D. Norton Co. (C.C.A.) 159 F. 361.

■ Third, the Supreme Court doctrine is definitely to the effect that one for whose benefit a contract is made may, although not a party to the agreement and even though not furnishing the consideration therefor, maintain an action thereon against the promissor; in short, that a third person can enforce a contract entered into between others for his benefit. See Hendrick v. Lindsay, 93 U.S. 143, 23 L.Ed. 855; Keller v. Ashford, 133 U. S. 610, 10 S.Ct. 494, 33 L.Ed. 667. In the present case the third party beneficiaries, that is, the bondholders of the Short Line, have a direct interest in the contract of guaranty; valuable consideration did, in fact, move from them through their trustee for such contract, and the intent of the parties to it is clear that a direct and not merely an incidental benefit was intended to be conferred upon the bondholders. The result is the same if the Maryland law is applied. See Mackenzie v. Schorr, 151 Md. 1, 133 A. 821. Nor does the fact that the present contract of guaranty was under seal alter the situation, because by article 75, section 15 of the Maryland Code, in suits brought upon sealed instruments executed since June 1, 1914, those entitled to sue or liable to be sued thereon but for the seal, are entitled to sue and are liable to be sued notwithstanding the seal; and this court is governed by that statutory provision in its application to the contract of guaranty, a Maryland contract. Swift v. Tyson, supra; Bausch & Lomb Optical Co. v. Wahlgren (D.C.) 1 F. Supp. 799; Wahlgren v. Bausch & Lomb Optical Co. (C.C.A.) 68 F.(2d) 660; Pittsburgh Terminal Coal Corp. v. Williams (C.C.A.) 70 F.(2d) 65.

■■ Fourth, a creditor secured by real or personal property, upon default in pay-ment by the principal obligor, is entitled in a federal court to dividends on the full amount of his claim from his insolvent debtor, without first proceeding against or deducting the value of the security which he holds, provided that, after collecting from all sources, he is, of course, not paid more than the amount of his claim; a fortiori, the same is true as against one who has absolutely guaranteed such creditor's claim. Terry v. Tubman, supra; Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640; Jenkins, Receiver, v. National Surety Co., 277 U.S. 258, 48 S.Ct. 445, 72 L.Ed. 874. It is contended, however, that this federal rule should not be followed, but that a different rule of the Maryland state courts should be applied because Maryland real estate is involved. We are not impressed with this argument. Assuming, without discussing or admitting, that the Maryland rule may be different, because we have been referred to no case so declaring, the question here presented is: When and in what amount should dividends be paid on a secured creditor's claim in federal equity receivership of an insolvent debtor? It is clear, on the authorities heretofore cited, that such a question is to be determined by the rule laid down by the Supreme Court. See, also, Black & White Taxi Cab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co. (C.C.A.) 15 F.(2d) 509, affirmed 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426; Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763.

A case greatly stressed by the trustee as being in its favor is that of Pennsylvania Steel Co. v. New York City Railway Co., supra, decided in 1912, by the Circuit Court of Appeals for the Second Circuit. There, bondholders had filed a claim in the receivership proceeding of the Metropolitan Railroad upon a guarantee of "the punctual payment of principal and interest thereon at the time and in the manner specified therein." The bonds did not mature until 1948. The court denied the allowance of the bondholders' claim against the guarantor because they would not mature for more than 30 years, but did allow their claim for past-due interest. A careful examination of this case fails to disclose anything that is contrary to the conclusion reached in the present case.

■ The trustee has cited a number of Maryland and other decisions which have

no application to the precise facts in the present case, but, purporting to rely upon them, the trustee asserts that since the Short Line bondholders have no action at law against the W. B. & A., and since their sole remedy is an equitable suit in which the Short Line, as original mortgagor should be joined, namely, an action for foreclosure, which has not been brought, therefore, they have no standing in this proceeding in so far as their claim against the receiver of the W. B. & A. is concerned. However, as correctly stated by the receiver in reply, all that this would mean "from a practical standpoint would be for the court to give the Short Line bondholders an opportunity to overcome the objections by foreclosure or by making the Annapolis Short Line Railroad Company a party, by filing an independent suit, but in the end this would be to nobody's benefit and would result in some loss to some extent to everybody." Continuing, the receiver makes the following statement which we believe to be entirely sound: "At first blush it might seem that as the Short Line bondholders had taken possession of their property, which was subject to their mortgages, on August 20, 1935, when operations by the Receiver ceased, they should not be allowed to file a claim, but upon analysis, it seems to me that this alleged inequity is answered by calling attention to the fact that the amount now being distributed was earned in part by their property and part in all probability represents the proceeds of part of their mortgaged property, and by the further fact that the W. B. & A. bondholders likewise have taken their mortgaged property, sold it, and have gotten and will get the benefit of the proceeds of the sale thereof." Again, as observed by the receiver, "It would be rather shocking to think that in this case, where the guarantor acquired valuable property on the faith of its guaranty of principal and interest, and used that property for its own benefit for a long number of years, it could fold up and distribute its assets, ignoring the debts guaranteed, when it was common knowledge that the property remaining subject to the lien of the original debt was totally inadequate to pay the amount of those debts."

For these reasons, the exceptions of the Cleveland Trust Company, trustee, to the auditor's report must be overruled, and, accordingly, that report will be finally ratified and confirmed, to the end that distribution be made in accordance therewith.