Madden, Judge,
delivered the opinion of the court:
The Bankers Joint Stock Land Bank of Milwaukee, Wisconsin, was organized in 1918 as a joint stock land bank under the Federal Farm Loan Act. U. S. Code, Title 12, Bee. 811 et seq. Its stock and bonds were owned by private persons, and its profits, if any, went to such security holders. It operated under the supervision and regulation of the Federal Farm Loan Board. It made loans secured by mortgages on farms, and issued bonds secured by such mortgages and other collateral.
On July 1, 1927, the bank failed to pay the interest on its bonds and, pursuant to the statute, the Federal Farm Loan Board declared the bank insolvent and appointed a receiver to take possession of the property and assets and collect the debts and perform such other functions as might be directed by the Board.
The receiver, from July 2, 1927 to February 15, 1933, maintained at Milwaukee an office and staff. He turned overall money collected to the Treasurer of the United States, and received from the Treasurer funds for operating expenses and for dividends to the creditors of the bank. In keeping his accounts, he charged items of expense directly attributable to the preservation or realization of any particular asset, such as taxes or insurance or repairs on a mortgaged farm, or the court costs and auctioneer’s and local attorneys’ fees on the foreclosure of a mortgage, to that asset. But the fees and salaries paid to his general counsel, attorneys, bookkeepers, clerks and office help who did work in connection with the preservation and realization of all *58 the assets, were carried on' the books as operating expenses and charged to “Assets Held as Collateral to Bond Issues” and to “General Assets” (unpledged) in proportion to the actual income from both classes. All these expenses were paid out of the assets- of the bank and none out of public funds.
Plaintiff, the Bankers Farm Mortgage Company emerged from a plan of a Bondholders’ Protective Committee to acquire the outstanding bonds of the bank and to acquire and liquidate the assets of the bank, and carry on any other business in connection therewith which might enhance the value of the bank’s property.- It was incorporated in Wisconsin on April 15, 1931. ' By November 4, 1931, it had acquired the right .to purchase more than 95 percent in principal amount of. the bank’s bonds. It proceeded to issue its stock for some of the bonds and pay cash for a larger proportion of them. Oh July 29, 1932, plaintiff bought at the receiver’s sale- all the remaining assets of the bank except cash and Government securities, and title to those assets was transferred to plaintiff on August 5, 1932.
The receiver paid nine liquidating dividends to the bondholders of the bank periodically, the first being on-November 26, 1928, the second on December 5, 1931, and the last on February 15, 1933;- Plaintiff, as the owner of most of the bank’s bonds after November 5,1831, received dividends as such. The bank’s outstanding bonds on July 1, 1927, amounted to $15,771,600, exclusive of interest. The several dividends .paid to the bondholders amounted to about fifty cents on the dollar. • •
The receiver during the active period of receivership disbursed approximately .$2,000,000 for expenses which were allocated to specific assets of the bank, and as to which no question is here raised. He also expended a total net amount of $560,962.84 for the general administrative expenses of his office. Plaintiff’s contention is that these expenses should have been borne by the United States, and it seeks, as the owner of the bonds of the insolvent bank, to recover that amount.
The basis of plaintiff’s contention is that the pertinent statutes show an intention on the part of Congress to deal *59 generously with the bondholders of joint stock land banks in case of their insolvency. It concedes that these banks were operated with private capital and for the private profit of their shareholders and bondholders. But it points out that comparable provisions of the National Banking Act, U. S. Code, Title 12, Sec. 191 et seq., which act is the prototype of the Federal Farm Loan Act, expressly provided in Section 196 that in case of receivership of a national bank, all expenses of the receivership should be paid out of the assets before distribution of the proceeds, whereas the Federal Farm Loan Act, U. S. Code, Title 12, Secs. 961 to 966, makes no such provision.
Plaintiff contends that the omission is so pointed as to require a construction of the latter statute to the effect that the general expenses of the receivership were intended to be paid out of public funds. It refers to the case of Wheeler v. Greene, 280 U. S. 49, in which the omission from the Federal Farm Loan Act of a provision found in the National Banking Act was regarded by the court as significant in the construction of the former statute. But the language of the court makes it plain that the power given to the receiver by the National Banking Act, to enforce by suit the stockholder’s double liability, had a justification in connection with national banks that was lacking in the case of joint stock land banks. The court said, at page 51:
There is a plain reason for the difference. The national banks issue notes that constitute an important part of the currency of the country and that the United States has an interest in seeing paid. It is upon the bank’s refusal to-pay these notes that the Comptroller of the Currencyfis to appoint a receiver, and the authority to enforce the stockholder’s liability adds a security to the national circulation that is of national scope. But the Joint Stock Land Banks issue no such notes. They are created to make loans on farm mortgages to members of an association in a territorially limited district, and are relatively local affairs. It is contemplated that the bonds that they issue shall be secured by mortgages. _ There is not the same need that the stockholder’s liability should be summarily disposed of behind his back in Washington (Rankin v. Barton, 199 U. S. 228, 232; Gasey v. Galli, 94 U. S. 673, 681), rather than by the usual proceeding of a bill in equity *60 which is brought in the neighborhood, in which the stockholder can be heard and by which the assessment instead of one hundred percent can be adjusted to the specific case. Terry v. Tubman, 92 U. S. 156. The stockholders are to be held only “equally and rptably.” And, to say the least, the bill in equity is the most likely way of reaching that result.
Plaintiff also relies on Federal Land Bank of St. Louis v. Priddy, 295 U. S. 229. There the court recited, as one of several circumstances leading it to the conclusion that the federal land banks were subject to execution and attachment, the fact that the National Banking Act had been amended in 1873 to forbid attachment before judgment, while the Federal Farm Loan Act provided that federal land banks “shall have power * * * to sue and be sued as fully as natural persons.”
In the Greene case the power claimed was an unusual one, and in the Priddy case the exemption sought was an unusual one. Both called for statutory warrant, but in each the statute was silent and the silence in the circumstances implied negation.
In this case the receiver’s paying the expenses of the receivership out of the funds of the insolvent was not an unusual thing to do, but the thing that is universally done. It is fair that the owners of an enterprise, and its creditors, who have the benefit of an orderly liquidation of its affiairs when insolvent, should bear the cost of that liquidation. Plaintiff suggests no process of construction which would relieve creditors of this expense which yrould not similarly relieve the shareholders if the liquidation should produce more than enough to pay the debts. 'But that would mean that Congress intended that private investors who could profit without limit if the enterprise proved profitable, could, if it became insolvent, have the business wound up at public expense and their assets restored to them.
More than Congressional silence would be required to justify our finding of such an intention. In fact, the statute is just as silent with reference to the expenses of liquidation which plaintiff concedes to have been properly paid out of assets, e. g. the cost of local attorneys’ and sheriff’s fees in foreclosure. But the general legal and managerial direc *61 tion of the liquidation from the receiver’s office was just as necessary, and presumably, just as valuable to the property as these local expenses.
Congress omitted from the Farm Loan Act not only all mention of the expenses of receivership, ¡including those which plaintiff concedes to be proper charges upon the property, but also all mention of the requirements, found in the National Banking Act, that a notice to present claims must be given, U. S. Code, Title 12, Sec. 193, and that distribution of assets should be made from time to time. Id. Sec. 194. These omissions help to make it plain that the draftsmen of the Farm Loan Act were not, at this-point, following textually the National Banking Act in a manner which would make their omission to mention a normal attribute of receivership legislatively significant.
We are unable to find in the legislative situation the meaning urged by plaintiff. It follows that its petition must be dismissed. It is so ordered.
Jomes, Judge; and Littueton, Judge, concur.
Whitakek, Judge; and Whalex, Chief Justice, took no part in the decision of this case.