(Superior Court of Cincinnati.)
General Term.

NORTH FAIRMOUNT BUILDING & SAVINGS COMPANY v. FRED REHN, JR.

---

(1). A shareholder has no right in the absence of statutory authority, to have the affairs of a corporation wound up on the ground that it is insolvent.

(2). A simple contract creditor of a corporation who has not recovered a judgment against a corporation and exhausted his remedies at law has no right to have the affairs of a corporation wound up on the ground that it is insolvent.

(3). When threatened fraud and breach of trust are alleged and proven a court of equity may interfere by injunction and also by the appointment of a receiver if such remedy is necessary to prevent the threatened acts.

(4). Where a corporation is proceeding in good faith under a statute to wind up its affairs, a court of equity will not interfere unless it appears that the remedy furnished by the statute is inadequate.

(5). The fact that illegal or fraudulent acts have been committed by the board of directors of a corporation will not entitle a shareholder or creditor to an injunction where there is no threatened repetition of such acts.

(6). When the insolvency of a corporation is one of the essential elements, constituting the basis of the claim of plaintiff for relief against the corporation, such insolvency must be proven by a preponderance of the testimony. It will not be sufficient for the plaintiff by his proof to merely raise a doubt as to the solvency of the corporation.

---

On Error to Special Term.
SMITH, J.

The action below was brought by Fred Rehn, Jr., who is a non-borrowing member of the North Fairmount Building & Savings Company, a building association operating under the laws of Ohio. The petition alleged that the corporation was insolvent and that the directors had been guilty of mismanagement and of fraudulent acts in the performance of their duties as directors. The petition therefore prayed for an accounting between the corporation and its stockholders and between the stockholders themselves; for an injunction against the corporation and its directors restraining them in certain particulars, and for a receiver to take charge of the corporate assets; and for further orders practically winding up the corporation and distributing its assets among those entitled to them.

The answer was in effect a general denial of all the charges upon which the plaintiff based his right of action. Subsequently Fritz Perrot, a stockholder and depositing member, was allowed to file an answer and cross-petition in which upon substantially the same grounds as is alleged in the petition he prayed for similar relief. But in disposing of the case upon final hearing the court held that his answer and cross-petition was filed too late to have consideration and entered its judgment upon the issues as made by the plaintiff Fred Rehn, Jr., and the building association.

Upon the final hearing of the case the court appointed a receiver to take charge of all the assets of the association, of every character; and directed him "to collect all moneys due said company, and to bring all necessary legal proceedings for that purpose; and also for the purpose of setting aside the cancellation of any mortgages which may have been improperly cancelled by said company; also to recover back any sums of money which may have been improperly received by or paid to any of the officers or stock-

holders thereof; also to make any and all persons interested in or who may be necessary parties to the final adjustment and settlement of the matters and things growing out of the business of said company, parties to this action; and to institute any suit, or suits, that may be necessary to affect such adjustment or settlement."

The court also appointed a special master commissioner to take testimony in writing and hear evidence and report the same to the court and therewith to report,

"First: What amount, if any, the said company owes and to whom, on account of any special deposit, or other special indebtedness contracted by it.

"Second: What amount is due to each of the stockholders and members of said company.

"Third: The names of the several stockholders and members who have withdrawn any moneys or deposits from said company since the —— day of July, 1894, together with the time and amounts of said withdrawals.

"Fourth: What losses, if any, have been sustained by said company at the time when any of said moneys or deposits were withdrawn by any of the members and stockholders mentioned in the last paragraph and what amounts, if any, should have been deducted from the several sums due or paid to such withdrawing depositors and members on account of the losses aforesaid, over and above any sums deducted on account of such losses.

"Fifth: With what sums should each of said withdrawing members and depositors be charged in order to equalize and distribute among the members of said company the losses sustained by it since the —— day of July, 1894.

"Sixth: What mortgages have been cancelled by the company since the —— day of July, 1894, and what sums should be charged to the mortgagors therein or either of them over and above the sums charged to them on account of losses sustained by said company from and after the date aforesaid."

And the court further ordered:

"That the defendants, the North Fairmount Building and Savings Company and its board of directors, be and they are hereby forever enjoined and restrained from distributing or paying out any of the moneys in their hands or any of the assets of said corporation to any person whomsoever except to the receiver appointed, and from selling or conveying any of its property and assets."

I have quoted at some length from the final decree in the case, because it will become necessary hereafter to make reference to the findings quoted; and because the parts of the decree quoted make clear that the order of the court was intended to take the property of the association, and the management of the same, entirely out of the hands not only of the directors of the association but also of the stockholders and to wind up the affairs of the corporation through the officers of the court.

From the opinion of the court below, as well as from the arguments of counsel in the case, we learn that the court based its action upon two findings: first, the insolvency of the corporation, and second, the constructively fraudulent conduct of certain of the directors, (a) in withdrawing from the association, together with a number of their relatives, after they believed the association was insolvent; and (b) in permitting certain members to purchase real estate owned by the association and in permitting others to pay off their mortgages, by turning in as cash, in payment for the same, their own and the pass books of others.

The building association has prosecuted error to reverse the decree of the court below; and asks that the property of the association be restored to it.

The first inquiry which must be met and answered is — what power has a court of chancery, in the absence of a power conferred by statute, to wind up the affairs of an insolvent corporation, upon the application of one of its stockholders?

In 4 Thompson on Corporations, section 4538, it is declared that: "In the absence of statutes enlarging its

powers, the general rule is that a court possessed of chancery powers merely, has no jurisdiction, either at the suit of the state through its attorney general, or at the suit of a stockholder or other private person, to dissolve a corporation and decree its winding up, for the mis-user or non-user of its franchises, or for other cause; but that the only proceeding which can be taken to that end is a proceeding by the state, on information in the nature of a quo warranto, in a court of common law jurisdiction. The theoretical reason is that the franchises are granted by the state and that they can only be vacated or forfeited in a proceeding by the state which generally takes the form of a proceeding at law by information in the nature of a quo warranto. The rule had its origin at the time when corporations were created by special charters, the grants of which conferred valuable and exclusive franchises upon their grantees."

It is true that Mr. Thompson criticizes this rule, yet in section 4539 he again asserts its existence by declaring that: "Subject to the exceptions here and there considered, the general rule, in the absence of statutory authorization, is that a stockholder, as such, cannot maintain an action in equity to wind up the company, take an account of debts and assets, apply its property to the payment of its liabilities, divide the surplus among the stockholders, and for other incidental relief, such as cancelling outstanding bonds issued contrary to law.".

And the same rule is declared in High on Receivers, section 288, in which he declares: "It is to be observed in the outset, that the general jurisdiction of equity over corporate bodies does not extend to the power of dissolving the corporation or of winding up its affairs and sequestrating the corporate property and effects, in the absence of express statutory authority. And the courts of equity will not, ordinarily, by virtue of their general equitable jurisdiction, or of their visitatorial powers over corporate bodies sequestrate the effects of a corporation, or take the management of its affairs from the hands of its own officers and entrust it to the control of a receiver of the court, upon the application either of creditors or shareholders. And while equity may properly compel officers of corporation to account for any breach of trust in their official capacity yet in the absence of statutes extending its jurisdiction, it will usually decline to assume control over the management of the affairs of a corporation upon a bill filed by a stockholder alleging fraud, mismanagement and collusion on the part of the corporate authorities, since such interference would necessarily result in the dissolution of the corporation and the court would thus accomplish indirectly what it has no power to do directly. The remedial power exercised by courts of equity in such cases, extends no further than the granting of an injunction against any special misconduct on the part of a corporate officer, and although the facts shown may be sufficient foundation for such an injunction, the court will not enlarge its jurisdiction by taking the affairs of a corporation out of the management of its own officers, and placing them in the hands of a receiver."

And the same rule is declared in Beach on Receivers, (page 86) as follows: "Courts have not the power to appoint receivers to wind up the affairs of corporations in the absence of statutory provision."

A strong case to the same effect is, Strong v. McCagg, 55 Wisconsin, 624.

And in this state, by reason of the statutory provision (sec. 5651) enabling "stockholders representing not less than one-third of the capital stock of any corporation organized under the laws of this state" to have a dissolution and winding up of the affairs of the corporation; and, by virtue of section 5673, in case the corporation is organized for mining and manufacturing purposes authorizing stockholders "owning one-fifth or more of the paid up stock" to proceed in the courts to have dissolution and winding up of the corporation, it would seem as if such legislative declaration was intended to exclude a stockholder from the right to have a corporation dis-

solved or wound up merely because it is insolvent.

The same conclusion appears to have been reached in this state by the circuit court for this county, in the case of the C. H. & D. R. R. Co. v. Duckworth, 2 C. C., 518, and by the common pleas court of Columbiana county, in the case of Cronin v. Potter's Co-operative Co., 29 W. L. B., 52. So far as the action below, therefore, was by the plaintiff in his character as a stockholder to have the corporation wound up, because it was insolvent, it must necessarily fail.

We come next to consider the right of the plaintiff as a creditor to have the affairs of a corporation wound up on the ground that it is insolvent.

We assume for the purposes of this case that a stockholder in a building association is both a stockholder and a creditor of the association without expressing any opinion upon the correctness of the proposition.

The question as to the right of a simple contract creditor to have a court of equity, through a receiver, take charge of an insolvent corporation and wind up its affairs on the ground of insolvency has been lately considered and decided by the supreme court of the United States in the case of Hollins v. Brierfield Coal Co., 150 U. S., 371.

It was held in that case that no such power existed. The argument in favor of the existence of such power was that the assets of a corporation constitute a trust fund and that when the corporation is insolvent a court of equity will proceed to administer the trust fund in the interest of all the beneficiaries among whom are the creditors of the corporation.

In the course of the decision, while admitting that for some purposes the assets of a corporation were considered a trust fund to which the creditor might have resource, the court nevertheless declared that mere insolvency of the corporation was not sufficient to establish that relation of the assets towards a simple contract creditor to the extent that by a mere showing that the corporation was insolvent such creditor would be entitled to have

the affairs of the corporation wound up by a court of chancery.

The following citations are particularly pertinent: "While it is true language has been frequently used to the effect that the assets of a corporation are a trust fund held by a corporation for the benefit of creditors, this has not been to convey the idea that there is a direct and express trust, attached to the property. As said in 2 Pomeroy's Equity Jurisprudence, section 1046, they are not in any true and complete sense trusts and can only be called so by way of analogy or metaphor." (page 381). And: "The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. That is certainly the general rule, and if there be any exceptions thereto, they are not presented by any of the facts in this case. Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock subscriptions, nor all together, gave to these simple contract creditors any lien upon the property of the corporation, nor charged any direct trust thereon." (page 385.)

As, therefore, there exists no trust relation between the simple contract creditor and the corporation, it follows, as said by Chief Justice Waite in Terry v. Anderson, 95 U. S., 628, that: "A creditor must put his demand into judgment against his debtor and exhaust his remedies at law before he can proceed in equity."

See to the same effect Mills v. Northern Railway of Buenos Ayres Co., 1870, L. R. I. Ch. App., 621; Pond v. Framingham & Lowell R. Co., 1881, 130 Mass., 194; Morawetz on Corporations, 2nd Ed. secs. 783 and 786; Taylor on Corporations, 4th Ed., 663.

While this precise question was not before our supreme court in the case of Barrick v. Gifford et al., 47 Ohio

St., 180, in which the question was as to when the statute of limitations begins to run against the right of a creditor to assess the double liability of stockholders, yet much that is said by the court is pertinent to the question under review and would seem to' warrant the conclusion that when presented our supreme court will announce the same principle as that' declared by the U. S. supreme court in Hollins v. Brierfield.

The first syllabus of Barrick v. Gifford is: "Where a corporation possessed of property subject to levy and sale on execution, though not sufficient to pay all its debts, continues to transact its business the right of a creditor to enforce the statutory liability of its stockholders does not accrue, until an execution issued upon a judgment against it has been returned unsatisfied for want of goods whereon to levy."

In Younglove v. Lime Co., 49 Ohio St., 665, a case of a similar character, viz. To enforce the statutory liability of stockholders, the court further explaining the position it had announced in Barrick v. Gifford declared that: "When, however, the corporation has done or suffered to be done, any act which, would render judgment and process against it of no avail, as where its property has been placed in the hands of an assignee in insolvency or bankruptcy, or by appointment of a receiver, or dissolution of the corporation or some other legal proceeding, its property has been put in process of application to the payment of its debts, the creditors may proceed against the stockholders without first putting their claims in judgment against the corporation. Morgan v. Lewis, 46 Ohio St., 1; Barrick v. Gifford, 47 Ohio St., 180; Bronson v. Schneider, 49 Ohio St.

In such cases the insolvency of the corporation is as effectually established and the creditor's remedy as fully exhausted as they would be by the return of "an execution issued against it unsatisfied in whole or in part."

The principle declared by our supreme court in this line of cases (although the state of facts to which it is applied is different) is nevertheless the same as is declared by the U. S. supreme court in Hollins v. Brierfield Coal & Iron Co., viz: That creditors seeking to collect their debts from corporations must first exhaust their remedies at law before they seek the aid of a court of equity.

The result of the application of that principle to the case at bar is that a simple contract creditor generally speaking has no right to ask a court of equity to take charge of the assets of a corporation for the purpose of applying them to the payment of its debts until it appears that he has exhausted his remedies at law, chief among which is the recovery of a judgment at law and return of the execution on the same unsatisfied in whole or in part.

It might be urged, however, that by the syllabus in Barrick v. Gifford the principle to which we have referred is applicable only in cases where the corporation (to use the language of the syllabus) "continues to transact its business;" and would not be applicable to a case of this character where the association itself had determined to wind up its affairs.

It may possibly be true that where a corporation, even though it denies in good faith its insolvency as is done in this case, yet has determined itself to wind up its affairs and distribute its assets, that the cases of Barrick v. Gifford, and Younglove v. Lime Co. would not apply and that the right of action of the creditor as respects the double liability of the stockholder would accrue; but whether such is the case or not it is clear that such a condition of affairs would not warrant a court of equity in taking the management of the corporation out of the hands of its directors, and stockholders, upon the mere ground that they might be, or are, mistaken as to its solvency. For in such a case a full measure of relief could be afforded by the injunctive process of the court extending to those acts only which threatened injury to the plaintiff.

But the necessity for the adherence of equity in this class of cases to its

well known principle that it will not interfere where the remedy at law is adequate, becomes much greater when, as in this state, a method for dissolving corporations is provided by statute (secs. 5651 to 5688) and when as in this case the corporation desires and has taken steps to wind up the affairs of the corporation in the manner provided by the statute    Section 5687 is as follows:    "The board of directors or other officers having the control and management of any corporation in this state, may appoint three trustees to adjust and settle the affairs of such corporation and the trustees so appointed shall be authorized to use the corporate name of the corporation for such period as may be necessary for the adjustment and settlement of its affairs by suit or otherwise."

In compliance with the provisions of this section after the stockholders of the corporation, by vote, had authorized them so to do, the board of directors were taking steps to appoint three trustees when they were stopped by the appointment of a receiver and the injunction of the court.

Surely there can be no doubt that a mere contract creditor cannot prevent a corporation availing itself of the provisions of this section upon the mere ground that the corporation is insolvent.

In the case of City Pottery Co. v. Yates, 37 N. J. Equity, 548, it was held that a court of equity would not interfere with a corporation which was pursuing a statutory method of winding up unless some special ground for interference was shown, and in that case although it was admitted by the court that the corporation was insolvent, the appointment of a receiver for the same was set aside. We quote from that decision as follows: "I agree in the main question in this case with the view expressed by the vice-chancellor for it appears to me that it is conclusively shown that this company is insolvent and is not about to resume business within the meaning of the 17th section of the act respecting corporations. The jurisdiction of equity, therefore, attached to the case

and the bill was properly retained. But I think the decree should be modified by expunging from it the order for the appointment of a receiver. There is not shown in the proofs any stable ground for such an intervention on the part of the court. The directors having the affairs of the corporation in charge are about winding them up. They are men of property and of experience in business and there is every reason to believe that their closing of the enterprise will be more advantageous to the stockholders and creditors than the management of a stranger in this respect would be likely to prove. The transfer of administration appears to have been in part occasioned in the court below by stress of the fact that one of the directors had taken a mortgage by way of preference for debt due to him and it was indicated that such circumstance was suggestive of an influence in that quarter that might be dangerous to the interest of the other persons having a right to equitable protection. But there is no immoral taint in this mortgage.

\*    \*    \*    \*    \*    \*    \*

So far as the case shows or as there is reason for believing all the creditors of this company, and all its stockholders with the single exception of the petitioner are satisfied with its present management. A receivership would augment largely the expenses of closing up the business. Under these circumstances it seems to be entirely unnecessary to supersede the board of directors."

But even if it be conceded that the rule in Ohio which requires a creditor who wishes to have a court of equity assume jurisdiction of an insolvent corporation for the purpose of winding it up, must first reduce his claim to judgment and issue execution applies only in those cases where th corporation has not ceased to transact its business, yet, it is a sufficient answer to this contention to say that the evidence does not sustain the contention that the corporation had ceased to do business. It is true that nearly all the members had given notice of their intention to withdraw, and were await-

ing their turn under the by-laws to withdraw; yet there were a few who had not done so, and the board of directors was in session every week, proceeding with business as usual, and receiving over eighty dollars weekly in payment of dues. Although it is also true that the board had concluded that the wisest course to pursue was to wind up the affairs of the corporation as soon as it could be done, and were gradually, but steadily, directing its affairs to that end.

The foregoing discussion has made clear, we think, the proposition that the plaintiff in this case had no right in his character as creditor to have a receiver appointed for this association merely because the association was insolvent.

But it is urged that the directors could not be trusted either themselves to close up the affairs of the corporation, or to appoint three trustees to so act for the reason that in their conduct of the affairs of the association they had been guilty of both mismanagement and fraud and therefore the interference of a court of equity became necessary. This contention presents the question when and to what extent equity will appoint a receiver of a corporation on the ground of the fraud or mismanagement of the board of directors of the same.

This question was so thoroughly and satisfactorily discussed in the case of the C. H. & D. R. R. Co. v. Duckworth, supra, that we find it unnecessary to do more than refer to the conclusions reached by the court, in that case, where the application was made by a stockholder. Whether a non-judgment creditor has ever these rights it is not necessary to determine because certainly he has no greater rights; and measured by the rule laid down in the Duckworth case, the facts in this case would not warrant the appointment of a receiver such as was appointed in this case, viz: one to wind up the affairs of the corporation, even if it be conceded that fraud and mismanagement may in some extreme cases warrant such an appointment.

In the Duckworth case the court declared the rule to be that where a board of directors were guilty of fraud and mismanagement, the proper course was to enjoin the board from the continuance of the acts complained of and that it was only in extreme cases where the injunctive process of the court would not avail that the court would resort to a receivership; but that this receivership was but temporary in its character to tide over the corporation while the storm of fraud and mismanagement was threatening —not a receivership necessarily to wind up the association. The conclusions of the circuit court are stated as follows: (2 C. C., 525-6-7) "On the argument of this case, the counsel for the respective parties cited to us a great number of authorities on the questions thus raised and as to the cases in which a receiver should or should not be appointed. We cannot undertake a critical analysis or examination of these cases, and will imply state what we regard as the result of them, so far as they bear on the case at bar. It is this: 1st, that the appointment of a receiver is merely a provisional remedy ancillary and auxilliary to the main action and can only properly be made by a court of equity in an action pending therein, brought to obtain some other equitable relief, which the court has the right to grant; and where it is, or appears to be necessary to make such appointment in order to preserve the property during the litigation, so that the relief awarded by the judgment, if any, may be effective; and, 2nd, while it is the law that a court of chancery, by virtue of its general equity jurisdiction, and the control it thereby has in certain cases, over persons acting as trustees for others, may enjoin any and all conduct of the directors of a corporation in violation of the trust, or of the law, at the suit of a stockholder therein, it seems clear that in the absence of a statute conferring such authority, it would have no right, at the instance of such a person, to take any step for the sole purpose or, the primary object of which is, to wind up the affairs of the corporation, or in ordinary cases to take the control and management thereof from

those to whom the stockholders and the law have entrusted them, on the ground even that there has been mismanagement, or fraudulent conduct on the part of those in authority. But in our view, this rule has this limitation, that if on application by such stockholder to a court of equity for other equitable relief, to which it appears that he is entitled, it should be made clearly to appear to the court, thus called on to act, that the appointment of a receiver was really necessary to effect the purpose of the action, that in such case the court would for that purpose have power to make such an appointment. But we think it can not properly be denied, that if such necessity did not appear to exist, but on the contrary that full relief maybe afforded without a resort to such extreme measures (which while they continue in operation practically put an end to the exercise by the directors of their duties), a court of equity will exceed its powers, and abuse its discretion, if it so act. Judge White, in deciding the Sloane case, 31 Ohio St., 7, uses this language: "A provisional receivership is, in effect, an injunction, and something more stringent still. It is to be granted with great caution, and only in case of pressing apparent necessity. Edwards on Receivers, 13. The appointment of a receiver is an equitable remedy, and bears a similar relation to a court of equity, that proceedings in attachment bear to courts of law. Hence, the appointment of a receiver has been said to be an equitable execution, Jeremy's Eq. Jur., 200."

So also on this point Beach on Receivers, sec. 324 et post. "But we see no good reason to hold that this remedial process of the law if necessary to afford full relief to a stockholder, asserting an apparently just and equitable claim against the company in which he holds his shares, is not to be granted to him. If it should be manifest, for instance, where he had filed his petition to enjoin certain illegal acts on the part of the directors that unless the property were placed in the hands of an officer of the court it would fraudulently and in-

stantly be disposed of by them to his great loss (and we can easily conceive of such a case, and it has probably arisen in the history of this very company within the year), it would seem that it would be a denial of justice to refuse him such relief. A court of equity, which may rightfully at times enlarge its jurisdiction, would be slow to stand on such a ground unless it felt absolutely compelled to do so by some inflexible rule of law."

With these principles in view let us briefly examine the evidence to determine whether there are any such threatened actions of the directors or of the trustees to be appointed by them which would authorize the appointment of a receiver.

The wrongful acts which the court below found to have been committed by the directors may be classified under two heads:

First: That they permitted a number of members who had borrowed money from the association and who had given mortgages to secure their loans to pay off the same with pass books of the association, such pass books being received at their full face value. And that they also sold pieces of real estate at auction to various members, taking their pass books in he same manner in payment.

Second: That after the directors believed or suspected that the association was insolvent, they, with, a large number of their relatives, withdrew their money from the association without informing the other members of the association of their belief or suspicion.

The court below found that in neither class of cases were the directors guilty of any actual intention to defraud the association but that their acts amounted to "constructive fraud."

Referring now to the first class of cases it is proper to state that in no case was property sold at less than its cost to the association; that this course was taken under the advice of their counsel, and of the state inspector of building associations; and then only upon two or three occasions when, on the attorney's advice, that

complications might ensue or some question be raised as to the validity of such a course, the same was abandoned before the suit was brought.

The payment of mortgages by pass book was also permitted in one or two cases only, and the policy, also abandoned before suit brought for the same reasons as controlled them in abandoning the sale of property previously referred to.

It seems to us quite clear that these acts would not justify throwing the association into the hands of a receiver or even of issuing an injunction against the directors.

First: Because the acts, even if illegal, as to which we express no opinion, were done in good faith and were free from all taint of moral turpitude.

Second: Because they have been abandoned and there is no intention or threat that they will be repeated, and

We come next to consider the second class of wrongful acts previously referred to.

We do not mean to hold in this case that directors may take advantage of the knowledge of the affairs of an association, which knowledge comes to them in their trust relation as directors, to withdraw their interests from an association, without communicating their knowledge to the stockholders at large, and in this way acquire an advantage over other shareholders of an insolvent corporation. We do not regard this case as necessarily presenting that question, and therefore express no opinion upon it.

It is only fair to the directors, however, to state that their withdrawals were made strictly according to the laws of the association by making application for their money and awaiting their respective turns; and that the amounts drawn out by them are not disproportionate to the amounts drawn out by the other members of the association, because the evidence discloses that the amounts which the directors have left in the company are a greater proportion of the total not withdrawn than the amounts which they withdrew were of the total amount withdrawn, viz Total still due mem-

bers, $52,029.05. Of this $9,415.65 is due directors, or more than one-sixth. Total withdrawals, $14,523.16. Withdrawals by members, $20,148.80, or less than one-seventh; or, counting Seitz, who ceased to be a director long before the suit, a little more than one-sixth.

But it is not contended now that these directors are in the future to be treated differently from the other members, and it seems to us, therefore, that if their past acts were illegal, there is no threat that the same are to be continued; and therefore no injunction should issue against them, first, for the reason that they acted in good faith; and second, because they have no intention of continuing such acts. As, therefore, the acts of mismanagement and fraud complained of do not entitle plaintiff to an injunction, much less is he entitled to the appointment of a receiver.

The discussion this far has been on the assumption that the association is insolvent, as seemed to be the opinion of the court below; but we are unable to sustain this finding of fact. We cannot bring ourselves to think that the evidence rises to any greater probative force than to raise a doubt as to whether the association is solvent or not; and before the association can be held to be insolvent we think such fact should be proven as any other fact in issue by a preponderance of the testimony, and this is especially true if it is to be made the basis of an interference with the affairs of the association by the extraordinary remedy of a receivership.

A brief statement of the financial condition of the association will be sufficient to explain the reasons which have led us to this conclusion.

The last balance sheet before suit, April 26, 1898, showed:

| ASSETS. | | LIABILITIES. | |
|---|---|---|---|
| Cash on hand........$ | 558.46 | Due to members....$52,029.05 | |
| Mortgage Loans......43,780.83 | | Reserve Fund...... | 2,738.84 |
| Real Estate...........11,187.46 | | Net Gain............. | 1,085.97 |
| Taxes due from borrowers................. | 107.11 | | |
| Stationary Account.. | 30.00 | | |
| Furniture and Fixtures................. . | 190.00 | | |
| Total. ...........$55,853.00 | | Total............ $55,836.86 | |

It was also shown at the trial that the company's property, by the advice of the state inspector, November 14, 1897, was appraised by six capable men who, on his advice, made it very low; that three of them were not members of the association, and in every instance in which there has been a sale since such appraisement, and there have been several sales, a profit has been realized over this appraisement, and several pieces could have been sold during the trial at considerably above the appraisement.

It was also shown that the company's investments netted six per cent at the time of the trial; and that the company had declared dividends for the preceding six months, and would be able to do so for the next six months.

It was also shown that the total expenses of the company were only $9.40 per week and its profits $83.00 per week.

Notwithstanding these facts the court below was of the opinion that the association was insolvent for the reason that one of the pieces of real property owned by the association, viz: a leasehold known as the McGill Leasehold, although appraised by the appraising committee appointed at the suggestion of the building inspector, at $4545.00, was of no value, and instead of being an asset was a liability, in as much as there had been for several years, after paying all taxes, charges and assessments upon it, an annual loss of $400.00. By deducting the $4545.00 from the assets, the court found the association insolvent by only $991.00.

But it also appears that the association has invested $12,000 in the property, a large part of the same having been devoted to erecting buildings and making improvements on the same; that the annual loss was due to inability to rent all of the property; and that the period of time during which this loss has occurred has been one of extraordinary depression in real estate. Under these circumstances we cannot believe that this leasehold is valueless; and the only weight that the evidence to that effect produces

upon our minds is to raise a doubt upon the question.

As the evidence does not prove insolvency there is no occasion for the appointment of a master to determine various questions of law which cannot arise unless the association is insolvent; and there is no occasion to appoint a master to state an account between the various stockholders because there is no dispute as to the account.

For the reasons stated we are therefore of the opinion that the court erred in appointing a receiver of the association and in enjoining the directors from acting in any manner whatever with respect to its assets; and in appointing a master to state an account and to determine various questions of law which can only arise if the association becomes insolvent, which may never happen. Whether it is now or may become necessary in view of a possibility of insolvency that the court should enjoin or undertake by the injunctive process to control the action of the trustees who are about to be appointed for the collection and distribution of the assets of the corporation until it is determined whether the corporation is insolvent we do not determine; because that question is not necessary to the determination of the case as it is now before us.

We have examined the record of this case and the opinion of the court below with the care that the importance of the case demanded and have been impressed with the painstaking and conscientious manner in which the court below tried and decided the case; but the evidence of the plaintiff has not made the impression upon our minds that it seems to have made up on that of the trial judge.

Certain considerations which we felt bound to bear in mind when reviewing the evidence in the case it may be proper that we should briefly state.

We have not at hand a statement of the amount of money invested in the building associations in this county, but we are safe in stating that it will amount to many millions. These associations for years have been the sav-

ings banks of the poor; and the amounts deposited in them represent manual labor and self-denying frugality to a greater extent than the money of any other depositories. They have not always been managed with judgment or sagacity; sometimes unfortunately not even with honesty; but in the main, whatever mistakes of management have occurred have been mistakes of judgment, because the great body of officers of the associations like the great body of the members have been honest and well meaning.

The depression of the last six years has not failed to be felt by building associations; the enforced idleness of large numbers of their members has necessarily increased the number and frequency of the applications of withdrawal; while the hard times and consequent failures have often prevented the borrowing members from keeping the interest paid on their loans; and in the depressed condition of real estate it has been impossible for the associations to sell either the real estate they own or that upon which their mortgages were taken at a price which did not mean a serious loss to the associations. Thus the associations have been beset by embarrassment on all sides and it is not to be wondered that many of them appear to be insolvent when such is not really the case.

Creditors clamorous to collect what it is not always in the power of the associations to pay are having recourse to the courts to wind up the associations alleging insolvency, mismanagement, fraud, errors of judgment and various other grounds.

When a proper party plaintiff appears in court with a cause of action alleged and proven which entitles him to relief at the hands of the court it will be the duty of the court to grant him the relief to which he is entitled.

But experience has shown that the expense of winding up associations in the courts is necessarily great and shareholders may well pause before they call upon master commissioners, receivers, receiver's attorneys, sheriffs, and other court officers to work out their embarrassments for them. If an association is of doubtful solvency before it enters upon this plan its solvency will not be doubtful before it is concluded.

It is in view of considerations such as these that we have felt it our duty to remind the public and the bar that a court will not concede insolvency until it is proven and that evidence sufficient to raise a doubt as to solvency is not sufficient to establish the fact of insolvency.

For the reason above stated the judgment of the court below in appointing a receiver; in enjoining the directors from acting in any manner with respect to the assets; and in appointing a master commissioner to state an account will be reversed.

Jackson and Davis, JJ., concur.

Albert T. Brown and Judson Harmon, for Plaintiff.

M. F. Galvin and John C. Healy, for Defendant.