# UNITED STATES *v.* CADARR.*

CRIMINAL LAW; APPEALABLE ORDERS; CRIMINAL PROSECUTION, ABANDON-
MENT OF.

1. Under § 935, D. C. Code, an appeal will lie by the United States from an order of the supreme court of the District of Columbia quashing an indictment upon the ground that more than 9 months elapsed between the holding of the accused to bail and his indictment by the grand jury.

2. Section 939, D. C. Code, providing that if, within 9 months after the committing or holding of a person to bail, the grand jury shall not act upon the case, the prosecution shall be deemed to have been abandoned, applies to a case where the accused was arrested and committed, or held to bail, prior to the date the Code went into effect, and where the charge was then pending, but not acted upon by the gran : jury.

3. The discharge of an accused person under § 939, D. C. Code, on i' ground that no indictment had been found against him within 9 mont' from the time he was held to bail, is a final discharge, and bars futu·‹ indictment and trial for the same offense.

4. Section 1044, U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 725), pic viding that no person shall be prosecuted unless the indictment i found within 3 years after the commission of the offense, is not re pealed by § 939, D. C. Code, providing that if, within 9 months after the committing or holding to bail of the accused, the grand jury shall not act on the case, he shall be discharged; but the effect of the two sections read together is, that no person shall be prosecuted unless an indictment is found within 3 years after the commission of the offense, and all persons who, after the commencement of a prosecution, are for 9 months held in custody, or under bail, to await the action of the grand jury without action of that body, shall be finally discharged.

5. When it is provided that a statute shall take effect at a date appreciably later than its passage, the question of whether a reasonable opportunity has been afforded for the commencement of an action under the

---

*\*Delay—Ground for Discharge of Accused.*—As to delay in prosecution, including failure to indict, as ground for discharge of accused, see the full presentation of authorities in editorial note to *Re Begerow,* 56 L. R. A. 513.

statute before a bar provided by it takes effect, is to be determined by reckoning from the date of passage, and not from the date at which the act takes effect; and the 9 months within which a person held to bail, or committed, must, under D. C. Code, § 939, be indicted by the grand jury, or otherwise finally discharged, must be reckoned, in a case in which the commitment occurred subsequent to the date of the passage of the Code, March 30, 1901, but prior to the date it went into effect, January 1, 1902, from the prior date, and not the latter date.

6. In order to obtain a discharge under § 939, D. C. Code, providing that if, within 9 months after commitment or holding to bail, the grand jury shall not return an indictment, the accused shall be discharged, it is not necessary for the accused to move for his discharge prior to the return of the indictment against him, but he may move to quash the indictment before trial; and it is discretionary with the trial court whether it will allow him to withdraw a plea of not guilty and move to quash on that ground.

No. 1325. Submitted April 7, 1904. Decided June 30, 1904.

HEARING on an appeal by the United States from an order of the Supreme Court of the District of Columbia granting a motion to quash an indictment under the provisions of § 939, D. C. Code. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. C. A. Keigwin,* Assistant, for the appellant.

*Mr. H. Prescott Gatley* for the appellees.

Mr. Justice WRIGHT, of the Supreme Court of the District of Columbia, who sat with the court in the absence of Mr. Chief Justice ALVEY, delivered the opinion of the Court:

Upon April 25, 1901, the appellees, George E. Cadarr, Edward Parker, John T. Keating and John N. Meyers, were arrested upon a charge of conspiracy to defraud, on warrant issued out of the police court of the District of Columbia; upon the

same day each pleaded "not guilty" and was held to bail to await
the action of the grand jury.  Parker and Keating were admit-
ted to bail upon April 27, 1901, Cadarr and Myers on May 7,
1901, they having been under commitment meanwhile.    No
further proceedings were had against any of them until March
31, 1902, on which day, more than eleven months after the hold-
ing over, the grand jury returned into the Supreme Court of the
District of Columbia an indictment charging them jointly as in
the original affidavit.

Upon April 4, 1902, Cadarr, Keating, and Myers each plead-
ed "not guilty" as did Parker upon April 7th.   On May 1, 1902,
Parker withdrew his plea of not guilty and filed a motion to
quash the indictment, basing his motion upon the provisions of
§ 939 of the District Code, which are as follows:

"Sec. 939. Abandonment of Prosecution.—If any person
charged with a criminal offense shall have been committed or
held to bail to await the action of the grand jury, and within
nine months thereafter the grand jury shall not have taken ac-
tion on the case, either by ignoring the charge or by returning an
indictment into the proper court, the prosecution of such charge
shall be deemed to have been abandoned and the accused shall be
set free or his bail discharged, as the case may be:  Provided,
however, that the supreme court of the District of Columbia,
holding a special term as a criminal court, or, in vacation, any
justice of said court, upon good cause shown in writing, and,
when practicable, upon due notice to the accused, may from time
to time enlarge the time for the taking action in such case by
the grand jury."

This motion was found by the court to be well taken, was sus-
tained, and each of the defendants was discharged from the in-
dictment without day.   The case is here upon appeal from this
order.

Although the plea of not guilty was technically withdrawn by
only Parker, yet it is manifest from the general nature of the
discharge that the situation below was such that the others were
availing themselves of Parker's motion, although without the

formal withdrawal of their pleas, and that the court below and the respective counsel so regarded it.

It is suggested that appeal by the United States does not lie. Code, § 935, provides: "In all criminal prosecutions the United States * * * shall have the same right of appeal that is given to the defendant * * * ;" the right of appeal given to the defendant according to § 226 is from "any final order, judgment or decree of the supreme court of the District of Columbia;" the order appealed from at bar discharged the appellees from the indictment without day, and was therefore a final order and the appeal is properly here.

It is contended by Mr. United States Attorney that § 939 does not apply to the case at bar for the reason, as he says, that the offense charged was committed prior to its enactment. The Code was passed March 30, 1901, and came into effect January 1, 1902. The appellees were arrested on April 25, 1901, and the same day were held to await the action of the grand jury and gave bond: when the Code became operative January 1, 1902, the charge was pending.

It is urged that "upon the familiar rule that statutes are construed to operate upon future matters and not retrospectively, § 939 can have no effect upon these prosecutions;" "these prosecutions" were not yet passed, but present and future with respect to the time when the statute became operative; had been inaugurated before, pended at the time, and appear to be still continuing: at least according to the proceeding at bar: so that the propriety of applying the rule to which we are invited, is not manifest to a degree of clearness which is calculated to make it attractive. That which is not yet come to its end is still of the present; and so with a prosecution which the Code when coming to be the operative law, found in existence; § 939 does not directly deal with substantive offenses, but only with criminal charges which are endeavored to be formulated upon them. If it be questioned, does § 939 reach back to a prior offense? It is answered, no! but § 939 takes hold upon current prosecutions of past offenses, prosecutions which coexist with it: and if its effect upon prosecution as distinguished from the offense is such that

prosecutions are at length prohibited, judicial inquiry into the offense as such, is likewise at an end. So that the question of retroactive operation of statutes is not here, and we are at no need for discussing it.

The question is this: Does the Code apply to proceedings which were pending, when it took effect? Congress itself, through § 1638, speaks thus: "* * * Provided, That the provisions of this Code relating to procedure or practice and not affecting the substantial rights of parties shall apply to pending suits or proceedings civil or criminal."

What is the legal significance of the word "procedure?" The law "defines the rights which it will aid, and specifies the way in which it will aid them. So far as it defines, thereby creating, it is 'substantive law.' So far as it provides a method of aiding and protecting, it is 'adjective law' or procedure." Holland Jur., p. 78.

"The word 'procedure' as a law term is not well understood. * * * Fortunately, a distinguished writer on criminal law in America has adopted it as the title to a work * * * Bishop, Crim. Proc. In his first chapter he undertakes to define what is meant by procedure. He says: 'Sec. 2. The term "procedure" is so broad in its signification that it is seldom employed in our books as a term of art. It includes in its meaning whatever is embraced by the three technical terms, pleading, evidence and practice.' And in defining practice, in this sense, he says: 'The word means those legal rules which direct the course of proceeding to bring parties into the court and the course of the court after they are brought in.' " *Kring* v. *Missouri,* 107 U. S. 231, 232, 27 L. ed. 510, 2 Sup. Ct. Rep. 443.

The term "procedure" is said by Lush, L. J., to denote "the mode of proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right, and which by means of the proceeding the court is to administer: the machinery as distinguished from its product." *Poyser* v. *Minors,* L. R. 7 Q. B. Div. 329–333.

"Adjective criminal law, 'penal procedure,' * * * is the body of rules whereby the machinery of the courts is set in

motion for the punishment of offenders. It consists usually of two species; a simpler, *  *  * applicable *  *  * only to trifling transgressions: and a more solemn, for the trial of serious crimes. Each of these consists of several stages, having a strong resemblance to the stages of procedure in private law. In the more solemn procedure we may distinguish:—

I. The choice of the proper jurisdiction.

II. The choice of the proper court.

III. The procedure proper, consisting of—

1. The summons, by which the accused is called upon, or the warrant, under which he is compelled, to appear to answer the charge.

2. The preliminary investigation, terminating in the discharge of the accused, or in his being committed for trial.

3. The measures insuring that the accused shall be forthcoming for trial, *viz.*: either imprisonment or security given by himself or his friends.

4. The pleadings, by which on the one. hand the prosecution informs the court and the accused of the nature of the charge against him, and, on the other hand, the accused states the nature of his defense." Holland, Jur., pp. 334–335.

The section of the Code under consideration points out the next step appropriate to be taken in the cases of persons bailed or imprisoned without the formal pleading against them returned to the court during 9 months, and therefore relates to procedure. Neither does the section affect the "substantial rights" of the United States: for it does not affect its right to punish offenses, but only regulates the time in which the right shall be exercised: substantial rights are those the violation of which gives rise to a remedy, rather than the peculiar process through which the remedy is attained: so long as the right is not deprived of its remedy, the substance of the matter is not affected by a change in the duration of stages and steps which in any event must be passed on the way to the remedy: concerning these there are no vested rights.

"Alterations which do not increase the punishment, nor change the ingredients of the offense or the ultimate facts neces-

sary to establish guilt, but—leaving untouched the nature of the crime and the amount or degree of proof essential to conviction—only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure." *Hopt* v. *Utah,* 110 U. S. 574–590, 28 L. ed. 262–268, 4 Sup. Ct. Rep. 202.

By differentiating questions of "procedure" from those of "substantial rights," Congress has by the very act pointed out that questions which turn out to be of procedure are thereby removed from the realm of substantial rights, at least for the purposes of the particular statute under consideration.   The act applied to the prosecutions at bar.   As to its meaning, the section concerns that step in the progress of a criminal prosecution which intervenes between the termination of proceedings in examining tribunals and the inauguration of proceedings in the tribunal of final jurisdiction; the latter is accomplished by the return into court of an indictment found by the grand jury.   The section has nothing to do with hastening trial after indictment, for its provisions relate only to absence of indictment; "and within nine months thereafter the grand jury shall not have taken action on the case, either by ignoring the charge or by returning an indictment into the proper court, the prosecution of such charge shall be deemed to have been abandoned and the accused shall be set free or his bail discharged, as the case may be."

The phraseology "shall be set free or his bail discharged" is susceptible of two meanings: either, 1st: that he shall be set forever free from the substantive offense charged: or, 2d: that he shall be set free from only the specific charge of it then pending, and not free from the substance of the offense.

The first of the two constructions would altogether bar future indictment and trial: the second would sanction rearrest, indictment, and trial, even after a discharge had on account of the expiration of 9 months without action.

The question is, Which of the two meanings expresses the intention of Congress.

If in order to recognize that one which is the more agreeable to reason it be needful to proceed further than merely to state the two, the qualifying language of the section supplies *indicia* in the presence of which, we find our minds unable to perceive that there is room for any doubt of the matter: and we proceed to point out some of the reasons which appear to us.

First. It is not all cases of no indictment within 9 months which the statute reaches, but only those charges which are *neither* ignored within 9 months nor returned indicted within 9 months: with these only does the statute deal, leaving those ignored within 9 months, and those indicted within 9 months still in the operation of the common law and unaffected by the statute: the statute embraces only those whereon "the grand jury shall not have taken action" one way or the other.

This is a differentiation between all cases and some cases, with the statute applying only to some: and whatever construction be assigned the statute, its meaning can have no relation to charges ignored within 9 months, and no relation to charges indicted within 9 months, for these are exempted from the operation of the statute.

According to the common law, cases ignored and cases indicted are both subject to new inquisition and further indictment by grand jury; and such is the situation in which are left the cases exempted from the operation of the statute at bar.

Now it occurs to us, that if the second meaning be assigned the statute, we mean that construction which permits future indictment after 9 months of the cases operated upon by the statute, as well as those not operated upon, we shall behold upon the part of Congress a painstaking discrimination of all criminal charges into two classes: one wherein action is had within 9 months: the other, no action within 9 months: one class exempted from the operation of the statute, and left so that indictment may be had after 9 months, according to the common law: the other class within the operation of the statute and yet with but the same result that in this class too, indictment may be had after 9 months; a division into classes for the purpose of legislation, an exemption of one class from the legislation, legislation for the other

class, and yet the law turns out the same for both: the law for the class legislated upon remains the same as the law for the class not legislated upon; legislation had, but the law upon the point of the legislation remains the same as it was before; legislation, but no change in the law.

Second. It is provided in the section that the criminal term of the supreme court of the District or in vacation of any of its justices, "upon good cause shown in writing  *  *  *  may from time to time enlarge the time for the taking action in such case by the grand jury."

If the second meaning be attached to the statute, to wit: that the discharge is only from the pending prosecution, this proviso turns out not only unnecessary, but idle and useless: for if the discharge is only from the pending accusation, this leaves the grand jury already free to indict at a later period, because, according to the construction, it has never been deprived of that power. There is neither need nor reason for vesting in the court power to extend the time for action if action may be had independent of any extension: the fact that power to extend the time for action is conferred, and is to be granted only "upon good cause shown in writing," shows the legislative mind to have understood that unless there was extension, the time for action has finally expired with the nine months.

Third. As suggested *supra,* the second construction would sanction the rearrest and recommitment for a second period of nine months, upon a second charge of the same offense, immediately upon being once set free after the first nine months: not only for a second nine months after the first nine months, but a third after a second, and so *ad infinitum.* If this be the case, the entire statute accomplished no more than to require the vain ceremony of a discharge from incarceration to-day, and a recommitment upon a duplicate affidavit and warrant to-morrow: a discharge of bail on one day, and a reacceptance of the same surety upon a duplicate bond the next day. Now it is not in reason to say that legislatures concern themselves with mere idle projects: on the other hand, when an act is susceptible of two constructions of which the one will accomplish a very reasonable enforce-

ment of a constitutional right of the citizen, and of which the other will accomplish only an idle repetition of a useless ceremony which leaves the right inoperative, and when the subject of the legislation is within the orbit of the constitutional right, it ought to need but scant argument to identify which of the two constructions effects the legislative intent. The statute was enacted in the light and under the operation of the 6th Amendment of the Federal Constitution, and if the two are read together as they must be, the Constitution providing that, "in all criminal prosecutions the accused shall enjoy the right to a speedy" trial, and the statute providing that an accused who for nine months is held in custody or under bail with no step taken in the prosecution shall be discharged, it seems right clear that the act was intended in aid of the operation of the Constitution, and to make effective its guaranty.

If such was the purpose of Congress, and we find ourselves of that opinion, the purpose can be made effective only by according to the discharge an effect which relieves the accused from further accountability for the substance of the offense, and not only from the pending prosecution: for if he be discharged only from the pending prosecution during one moment, and left subject to the inauguration of a second prosecution at the next, and a third after a discharge from the second, the statute is eviscerated of the purpose which predicates its enactment. It was argued that this construction would accomplish a general jail delivery of the guilty. But shall courts assume to pronounce men guilty before they are tried or even indicted? The law operates for the innocent and for the guilty alike, until the identity of the guilty is ascertained by due process of law: neither the innocent nor the guilty ought to be indefinitely restrained in custody or under bail, and the constitutional rights of even the guilty are to be respected: indeed if surmise is to be indulged in, it is not destructive of penal procedure to hazard the assumption that one against whom, in nine months, no evidence sufficient to base an indictment is produced, is as likely to be innocent as guilty.

If the legislative purpose was not that the discharge should be

final but merely current, the only alternative purpose fit to be ascribed to Congress was a purpose to accommodate freedom from incarceration for those continuing nine months in custody: but the possibility of the existence of this as the purpose is eliminated by considering that the act applies as well to those who never were in custody but only bailed. If this latter purpose underlay the enactment, even it is destroyed by the construction suggested by the United States attorney: for not even freedom from incarceration would be accommodated by returning an accused into jail as often as he was turned out.

So that the discharge contemplated must be final, or the statute conceded no effect at all.

It is said that the construction which we find appropriate would accomplish a repeal of the general statute of limitations, (U. S. Rev. Stat. § 1044, U. S. Comp. Stat. 1901, p. 725) which provides that no person shall be prosecuted unless the indictment is found within three years next after the commission of the offense: the general statute operates with respect to the time of the offense, independent of the time of holding the accused to await the action of the grand jury: the section at bar operates with respect to the time of holding the accused to await action of the grand jury, and independent of the time of the offense: their respective provisions are harmonious, and might without conflict be incorporated together into a single section, as in effect they must be when read together: the effect of the two is to declare that "no person shall be prosecuted unless the indictment is found within three years next after the offense shall have been committed, and all person who after the inauguration of prosecution, are for nine months held in custody or under bail to await action of the grand jury, without action by the grand jury, shall be finally discharged." It has not been conceived that the statute which requires the perfecting within six days of civil appeals from justices of the peace, repealed the general statute of limitations upon the subject of civil actions, and the analogy seems accurate.

It is contended that even though the section be held to apply to pending cases, yet nine months must be reckoned from Janu-

ary 1, 1902, when the Code took effect, and not from the time of commitment or bail in particular cases; but this would in effect maintain that the act did not apply to pending prosecutions: for in order to apply it to a prosecution it must be given effect in that prosecution by working a discharge in that very case, after the expiration of nine months from the time of commitment or bail if it be not given this effect it has not been applied. The only limitation to be put upon its operation upon pending cases grows out of the established rule that statutes in the nature of limitations which affect existing rights should afford a reasonable time for the commencement of an action before the bar takes effect. *Terry* v. *Anderson,* 95 U. S. 628, 24 L. ed. 365; *Koshkonong* v. *Burton,* 104 U. S. 668, 26 L. ed. 886.

At bar the requirements of the rule were fully satisfied, for by the passage of the Code March 30, 1901, the government was put upon notice of a change in the law to become effective January 1, 1902: the appellees having been arrested upon April 25, 1901, the opportunity to indict them which the new legislation afforded continued through eight months in 1901, and one month of 1902: appellee was not indicted until March 31, 1902, longer than eleven months after being held to bail, and more than a full year after the government had been put upon notice of the nine months' limitation. The question is not so much whether the time intervening between the taking effect of the law and the operation of the bar afforded reasonable opportunity, as it is whether the time intervening between the enactment of the law and the operation of the bar affords reasonable opportunity. The fact that the law was enacted to take effect a considerable time *in futuro* is evidence enough that Congress ordained the period in order to afford the opportunity, and esteemed that the opportunity afforded was reasonable. When it is provided that an act shall take effect at a date appreciably later than its passage, the question of reasonable time is to be determined by reckoning from the date of passage: not from the date at which the act takes effect. *Duncan* v. *Cobb,* 32 Minn. 460, 21 N. W. 714; *State use of Isaac* v. *Jones,* 21 Md. 432; *Wrightman* v. *Boone County,* 82 Fed. 412;

*Hedger* v. *Rennaker,* 3 Met. (Ky.) 255; *Ross* v. *Duval,* 13 Pet. 45, 10 L. ed. 51.

It was contended that an accused can avail himself of whatever right the section gave, only by moving his discharge prior to the return of an indictment: that if, in fact, an indictment be returned after nine months and no application for discharge meanwhile, that he is too late, after the indictment.

If by the lapse of time, a right accrued in a defendant, who but himself can nullify the right? There is no way at all, unless through his voluntary waiver of it, or through an estoppel; and there is here no field for estoppel, for the government was uninfluenced by his quiescence. So that his right was there unless he had waived it: if he had, it was gone. Being without access to the deliberations of the grand jury or its proceedings, he was chargeable with no notice that they had during nine months taken no action upon his case, and there can be no waiver of a point concerning which he is not only ignorant in fact, but concerning which he is free from the implication of knowledge, either actual or constructive. He was bailed, and was as well justified to believe that the charge had been ignored, as that it had been suffered to slumber: indeed more: for he had a right to expect that the requirements of the law would be respected, both concerning action on his case within nine months, as well as concerning a showing of good cause in writing and an enlargement of time by the court, if it was expected to act on his case after nine months.

His right needed no action on his part for its existence, neither was there any necessity for its affirmative enforcement, until some interference with it developed. None ever did develop until the indictment was filed: if his plea of not guilty was with the intention to waive his right of discharge and stand his trial, the court below might with propriety have held him to it, and put him upon his trial: if his plea was inadvertent, and not with the intent to waive the right to a discharge, the court might with propriety have permitted the withdrawal of the plea and remitted him to his original right. The withdrawal of the plea of not guilty was for the discretion of the trial court, and the exercise of this discretion to the end of permitting the withdrawal and

thereby the elimination of the plea, concludes the question of a waiver through making the plea: for with the plea gone out of consideration it amounts to nothing. The judgment of the court below was right and is *affirmed.*

The Supreme Court of the United States granted the writ of certiorari to this court in this cause, and on April 3, 1905, reversed the decision.    (197 U. S. 475.)