U.S. Bank, N.A. v Nicholson (2024 NY Slip Op 50503(U))

[*1]

U.S. Bank, N.A. v Nicholson

2024 NY Slip Op 50503(U)

Decided on April 29, 2024

Supreme Court, Suffolk County

Fields, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 29, 2024
Supreme Court, Suffolk County

U.S. Bank, N.A., as trustee, Plaintiff(s),

against
Yolande Nicholson, et al., Defendant(s).

Index No. 205443/2022

HINSHAW & CULBERTSON LLP, New York, New York (Ashley R. Newman, Esq., of counsel), for plaintiff. 
IVAN E. YOUNG, ESQ., Brentwood, New York for defendant Yolande Nicholson

Aletha V. Fields, J.

Upon efiled documents 21-72 and all documents cited therein and herein considered on plaintiff's motion for leave to enter a default judgment against the New York State Department of Taxation and Finance (sequence 1) and on defendant Yolande Nicholson's motion to dismiss this action as time barred and for related relief, it is hereby
ORDERED that plaintiff's motion for leave to enter a default judgment against the New York State Department of Taxation and Finance be, and it hereby is, GRANTED; and it is further
ORDERED that defendant's motion to dismiss this action as time barred be, and it hereby is, DENIED; and it is further
ORDERED that counsel for each of the parties be, and each hereby is, directed to appear before this Court by virtual means using the standard Part 81 Microsoft Teams link (https://notify.nycourts.gov/meet/00awrv) for conference to discuss (a) any issue a party wants to raise; (b) settlement; and (c) scheduling, with such conference to be held at the following date and time certain: May 17, 2024 at 10:00 a.m.
This is a residential mortgage foreclosure action that plaintiff commenced on November 8, 2022 (Summons [Dkt. 1]; CPLR 304; Matter of Bosse v Simpson, 173 AD3d 856 [2d Dept 2019]). This is not the first action to foreclose. This is not the second action to foreclose, nor is this the third action to foreclose. This is the fourth action to foreclose.
Plaintiff commenced an action on May 8, 2008 (Summons [Dkt. 50]). On or about April 30, 2014, the justice assigned to the 2008 action decided plaintiff's contested motion to [*2]discontinue that action. There, the order set forth that "[i]n the absence of special circumstances, such as prejudice to a substantial right of the defendant or other improper consequences, a motion for a voluntary discontinuance should be granted" (Order [Dkt. 55] citing Expedite Video Conferencing Servs. Inc. v Botello, 67 AD3d 961 [2d Dept 2009]). When that justice granted plaintiff's contested motion to discontinue, it found that no prejudice to a substantial right of defendant and that no improper consequences occurred.
Plaintiff filed a second action on May 6, 2014, a date within six years of the May 8, 2008 acceleration. On August 10. 2017 the supreme court entered an order dismissing that action on defendant's motion based on plaintiff's list of housing agencies in plaintiff's RPAPL section 1304 notice lacking the address of those agencies (Order [Dkt. 66]).
Plaintiff filed its third action on December 1, 2017 (index number 623045/2017), but the supreme court dismissed that action on or about July 18, 2022 based on RPAPL section 1304 noncompliance (Judgment [Dkt. 57]). The same judgment also set forth, "it is hereby [ordered, adjudged, and decreed,] that the motion by plaintiff . . . is granted solely to the extent that the counterclaims asserted in the defendant's answer are dismissed, all with prejudice" (Judgment [Dkt. 57] at 1-2). This Court takes judicial notice [FN1]
of defendant's answer in the 2017 action, the first counterclaim of which set forth, "The [p]laintiff, its representations (sic) and/or agents have engaged in frivolous conduct in commencing this foreclosure action . . . because the statute of limitations ran with respect to" the foreclosure claim (Answer [Dkt. 20 in 623045/2017). Thus, at a minimum, plaintiff's position that the commencement of the 2014 action is the controlling acceleration event is not frivolous (22 NYCRR § 130-1.1 [c]).
Within six months of the 2017 action's dismissal, plaintiff commenced this action.
Defendant moves to dismiss this action as time barred. Plaintiff seeks leave to enter a default judgment against the New York State Department of Taxation and Finance.
I. Defendant's Statute of Limitations Defense
To succeed on a statute of limitations defense, "defendant must establish, prima facie, that the time in which to commence the action has expired. A mortgage foreclosure action is subject to a six-year statute of limitations. When a loan is not accelerated, the six-year statute of limitations begins to run as to each individual installment or other obligation when the borrower fails to pay such installment or comply with such other obligation (21st Mtge. Corp. v Balliraj, 177 AD3d 687 [2d Dept 2019]). Even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the [s]tatute of [l]imiations begins to run on the entire debt" (U.S. Bank, N.A. v Derissaint, 193 AD3d 790, 791 [2d Dept 2021] [internal quotation marks and citations omitted]).
Plaintiff alleges that the borrower defaulted on December 1, 2007 (Complaint [Dkt. 1] ¶ [*3]7). Obviously, the default occurred greater than six years ago. Moreover, when plaintiff filed the 2008 action, it accelerated the entire debt. That acceleration occurred more than six years prior to plaintiff's filing of this action. Defendant has made the prima facie showing necessary to shift the burden to plaintiff (MTGLQ Invs., L.P. v Lila,  AD3d , 2024 NY Slip Op 02047 [2d Dept]; Sarkar v Deutsche Bank Trust Co. Ams., 225 AD3d 641 [2d Dept 2024] [proof that the later action was commenced more than six years after commencement of the first action sufficiently establishes the prima facie case]).
The parties dispute whether the Foreclosure Abuse Prevention Act [FN2]
(L 2022, ch 821) applies. Defendant asserts that FAPA applies, and plaintiff contends that applying FAPA to this action would be unconstitutional. Plaintiff served the New York State Attorney General with its papers challenging the constitutionality of FAPA.
A. FAPA's Retroactivity
The parties argue whether FAPA should be applied retroactively. This issue has two components. The first component is whether, as a matter of implementing the legislative intent, courts should apply FAPA as the rule of decision regarding events that occurred before FAPA's effective date (December 30, 2022) and, as evident here, before a first rough draft of FAPA was even contemplated. The second component to retroactivity is whether retroactive application is constitutional. Obviously, if retroactive application is unconstitutional, either in general or as applied, then FAPA may not be used as a rule of decision either in any pre-effective date case or in the specific cases on the as applied basis.
B. Defendant's Motion Under Pre-FAPA Law and FAPA
This Court follows "the well-recognized rule that statutes are to be construed so as to avoid constitutional issues if such a construction is fairly possible" (FGL&L Property Corp. v Rye, 66 NY2d 111 [1985]). To highlight where FAPA's application changes the result in this action, thereby causing the sorts of constitutional infirmities that plaintiff argues exist, understanding the outcome of this motion under pre-FAPA law and post-FAPA retroactively applied law is essential.
1. The 2014 Action
Plaintiff argues that under the law as it then existed the voluntary discontinuance order had the effect of revoking the acceleration. Nonetheless, plaintiff recognizes that the possible revocation of acceleration in the 2008 action "is not determinative of the statute of limitations here because the 2014 [f]oreclosure [a]ction was timely filed" (Memorandum of Law [Dkt. 61] at 5-6). Plaintiff argues that the second action (2014 action) was commenced within days of six years immediately following the acceleration that plaintiff's commencement of the 2008 action triggered. Therefore, plaintiff is correct, and this Court finds that the 2014 action was timely commenced under both pre-FAPA law and retroactively applied FAPA.
2. The 2017 Action
As to the 2017 action, if the relevant acceleration date is the 2014 action's commencement, then the 2017 action was timely commenced because it was commenced within six years of the initial acceleration. In other words, if the voluntary discontinuance by contested motion revoked the acceleration that plaintiff's filing of the 2008 action triggered, then the 2017 action was timely commenced without reliance on a savings statute.
If, on the other hand, the relevant acceleration date is the 2008 action's commencement, then the 2017 action was still timely commenced under pre-FAPA law because CPLR 205 (a) provides a six-month savings period for a plaintiff to serve process in a later action. The proof of service on Yolande Nicholson in the 2017 action (Dkt. 8, in 623045/2017) establishes service occurred by the method set forth in CPLR 308 (4) and that the proof of service was filed on January 8, 2018. Service was completed ten days post-filing on January 18, 2018 (CPLR 308 [4]), which was within six months of the entry of the order discontinuing the 2014 action. Therefore, regardless of which commencement date, the 2008 action's or the 2014 action's, controls, the 2017 action was timely under pre-FAPA law.
FAPA added a saving statute particularized to mortgage foreclosure actions that have a six-year statute of limitations (FAPA [L 2022, ch 821, § 6]). Under it, so long as the prior action is not dismissed for a reason listed in the newly enacted CPLR 205-a, a six-month savings period applies beginning with the dismissal of the prior action. During that savings period, service must be completed (CPLR 205-a) as opposed to effected (CPLR 205; see, Deutsche Bank Natl. Trust Co. v Heitner,  AD3d , 2024 NY Slip Op 02170 [2d Dept April 24, 2024]). The listed reasons in CPLR 205-a do not include dismissal based on non-compliance with RPAPL section 1304 which was the basis to dismiss the 2014 action. Therefore, even under FAPA, the 2017 action was timely because plaintiff completed service of the 2017 action within six months of dismissal of the 2014 action. 
3. This 2022 Action
Now comes this action. Regardless of whether the accelerating event was plaintiff's commencing 2008 action or plaintiff commencing the 2014 action, plaintiff commenced this 2022 greater than six years after acceleration. Therefore, plaintiff must rely on a savings statute [FN3]
. However, important to this motion is that if the 2008 action accelerated the defendant's obligations and if the voluntary discontinuance of it by contested motion did not revoke acceleration, the plaintiff would be relying on a savings statute for the second time. If, on the other hand, the commencement of the 2014 action (i.e., there was a revocation of acceleration that commencing the 2008 action triggered) is the accelerating event, then plaintiff would be relying on a savings statute only for the first time.
a. The Relevant Prior Action for Savings Statute Purposes
The first issue to decide is what is the relevant prior action under the savings statute. The [*4]relevant prior action is the 2017 action because, as plaintiff correctly points out CPLR 205 (a) "is devoid of a limitation on the number of times a plaintiff can avail itself of the rule" (Memorandum of Law [Dkt. 61] at 7). This Court's research finds no case holding that a plaintiff may rely only once on CPLR 205(a)[FN4]
. This Court holds as a matter of law that a party may rely on CPLR 205(a) more than once if that party meets the other requirements of CPLR 205(a). Any other interpretation renders CPLR 205-a (a) (2) as needless surplus and violates that rule the legislature enacted that directs the judiciary that "[a]ll parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof" (McKinney's Cons Laws of NY, Book 1, Statutes § 98).
This interpretation "is in keeping with the statute's remedial purpose of allowing plaintiffs to avoid the harsh consequences of the statute of limitations and have their claims determined on the merits where, as here, a prior action was commenced within the limitations period, thus putting defendants on notice of the claim" (Malay v City of Syracuse, 25 NY3d 323, 239 [2015]). Malay speaks of a singular prior action because in Malay unlike here, only one prior action was at issue. The key substantive reason on which Malayrelies is whether defendant had notice of the claims and, obviously, plaintiff's timely pursuit of them either under the statute of limitation itself and/or as extended by a savings statute. Plaintiff has ensured, perhaps in contrast to an action involving defective service, that defendant had notice of the claims and that the "re-noticing" of plaintiff's pursuit of them occurred within the savings statute's grace period.
On this point, neither party argues that the savings statute grace period should be tacked on to the dismissal date of the 2014 action. Plaintiff explicitly argues for the 2017 action's dismissal date. Defendant argues not that the 2014 action's dismissal controls but that a second application of the savings statute is improper. A fortiori, defendant is arguing that the 2008 action's dismissal date would control.
b. Analysis Under the Pre-FAPA Savings Statute (CPLR 205 [a])
In this 2022 action, plaintiff completed service of process on defendant on December 17, 2022 (CPLR 308 [4]). The 2017 action was dismissed fewer than six months earlier and was not dismissed on grounds that disqualified plaintiff from relying on the CPLR 205 (a) savings statute (CitiMortgage v Moran, 188 AD3d 407 [1st Dept 2020] cited by Johnson v Cascade Funding Mtge. Trust 2017-1, 220 AD3d 929 [2d Dept 2023]). 
Thus, if the 2008 action accelerated without revocation, then under pre-FAPA law, this action is timely filed by virtue of a second application of the savings statute. If the 2014 action accelerated the loan (i.e., a revocation of the 2008 acceleration occurred) then under pre-FAPA law, this action is timely by virtue of a first application of a savings statute. In either instance, the savings statute grace period is tacked onto the dismissal of the 2017 action.
c. Analysis Under FAPA
"In any action on an instrument described under subdivision four a section two hundred thirteen of this chapter, the voluntary discontinuance of such action, whether on motion, order, stipulation or by notice, shall not, in form of effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute" (FAPA [L 2022, ch 821, § 8] enacting CPLR 3217 [e]). If this provision applies to this action, then under FAPA, the voluntary discontinuance of the 2008 action did not revoke the acceleration of the loan, even though the voluntary discontinuance occurred by contested motion.
The FAPA savings statute for mortgage foreclosure actions subject to a six-year statute of limitations [FN5]
sets forth, "in no event shall the original plaintiff receive more than one six-month extension" (FAPA [L 2022, ch 821, § 6] enacting CPLR 205-a [a] [2]). As described above under the pre-FAPA law analysis, if the accelerating event is the 2008 action's commencement, then the 2017 action was timely based on application of a savings statute and this action would require a second (and prohibited) six-month extension.
Thus, if these two sections of FAPA apply to this action (i.e., apply retroactively), then this action is untimely, and defendant's motion must be granted.
C. Retroactivity of FAPA
Sections 6 and 8 of FAPA apply retroactively to this action.
At least four times, the Second Department has applied FAPA retroactively without mentioning the possible constitutional issues that retroactive application creates. In ARCPE 1, LLC v DeBrosse, (217 AD3d 999 [2d Dept 2023]), the Second Department applied section 8 of FAPA (now CPLR 3217 [e]) to a voluntary discontinuance that occurred in 2012, a decade before FAPA's passage and simultaneous effective date (FAPA [L 2021, ch 821, § 10]).
Likewise, in SYCP, LLC v Evans, (217 AD3d 707 [2d Dept 2023]) the Second Department applied section 8 of FAPA (now CPLR 3217 [e]) to a voluntary discontinuance that occurred in 2013.
In U.S. Bank, N.A. v. Caldwell( AD3d ,  NY Slip Op — [April 24, 2024]), the Second Department applied section 8 of FAPA (now CPLR 3217 [e]) to a 2015 voluntary discontinuance and cited, as defendant repeatedly does, HSBC Bank USA, N.A. v Islam (221 AD3d 672 [2023]). Because the last appellate filing the parties to Caldwellmade was in 2021, no one argued FAPA or the constitutionality of retroactively applying it (see, NYSCEF docket for App Div 2d Dept case 2020-06692).
Similar to the holdings in each of DeBrosse, Evans, and Caldwell, in MTGLQ Invs., L.P. v Singh, (216 AD3d 1087 [2d Dept 2023], the Second Department applied section 8 of FAPA (now CPLR 3217 [e]) to a voluntary discontinuance that occurred in 2017. Plaintiff-appellant's motion to reargue before the Appellate Division argues that the Second Department decided the [*5]appeal on a ground not raised by the parties and "overlooked or misapprehended issues related to the constitutionality of retroactively applying FAPA" (Reply Affirmation [Dkt. 11 in Appellate Division case number 2020-1680] at ¶ 15). The case was argued before FAPA was enacted.
In U.S. Bank N.A. v Onuohu, 216 AD3d 1069 [2d Dept 2023]), the Second Department applied section 6 (now CPLR 205-a) to bar a plaintiff from relying on the savings statute when the prior action was dismissed as abandoned under CPLR 3215 (c). Under pre-FAPA law, dismissal of an action as abandoned under CPLR 3215 (c) did not disqualify a plaintiff from suing in reliance on a savings statute (Deutsche Bank Natl. Trust Co. v Brathwaite, 197 AD3d 557 [2d Dept 2021]). In the losing plaintiff's motion to reargue or alternatively for leave to appeal to the Court of Appeals, plaintiff contended as borne out by the parties' briefs, the decision and order "determined sua sponte that [the] lawsuit was time-barred under a provision of the Foreclosure Abuse and Prevention Act . . . codified as CPLR . . . 205-a, which the Legislature enacted after this [a]ppeal had been argued" (Affirmation in Support [Dkt. 11 in Appellate Division case number 2019-13088] at ¶ 4). Plaintiff argued that the decision and order's "retroactively applying legislation in a manner extinguishing a claim that was timely when made violates the due process guarantees of the federal and state constitutions" (id. at ¶ 7). The case was argued before FAPA was enacted.
These cases—and there are others—compellingly show that the Second Department has determined that as a matter of statutory interpretation, but without considering the constitutionality of such interpretation, FAPA section 6 (now CPLR 205-a) and section 8 (now CPLR 3217 [e]) have retroactive effect. This Court is bound by that precedent, subject to any constitutional limitations on the retroactive application.
In Brothers v Florence, (95 NY2d 290, 299 [2000]), the Court of Appeals determined that a statute of limitations change "was to . . . have retroactive effect." The first of the "several factors [that] convince [the Court of Appeals" (id.) was that the statute amending the statute of limitations was to take effect immediately. FAPA took effect immediately also (FAPA [L 2022, ch 821, § 10).
"Second, it is clear from the legislative history that the purpose behind the statute was to rewrite a judicial interpretation of the nonmedical malpractice [s]tatute of [l]imitations" (Brothers, 95 NY2d at 299). FAPA's legislative history sets forth, "[t]he bill amends certain statutes and rules to . . . overturn certain court decisions . . .. CPLR Sec. 3217 as concerns discontinuance of mortgage foreclosure cases and is a response to the Court of Appeals recent holding in Freedom Mtge. v Engel" (L 2022, ch 821, Assembly Mem in Support). No question exists that here, like in Brothers, the purpose behind the statute was to rewrite a judicial interpretation of the law.
The third factor on which the Brothers court relied was that the legislative history demonstrated that the change in the law was remedial to address an injustice. There, the injustice was subjecting certain professionals to a statute of limitations twice as long as the statute of limitations for medical professionals. The statute in Brothers sought to treat people equally. FAPA's legislative history sets forth that a purpose of FAPA is "to ensure the laws of this state apply equally to all litigants, including those currently involved in mortgage foreclosure actions" (L. 2022, ch 821, Assembly Mem in Support [emphasis added]). Any lingering doubt about the remedial nature of FAPA evaporates after reading, "[t]he aim of this bill is to thwart and eliminate abusive and unlawful litigation tactics that have been adopted and pursued in mortgage foreclosure actions to manipulate the law and the judiciary to yield to expediency and [*6]the convenience of mortgage banking and servicing institutions" (id.).
The final Brothers factor was the determination that the statute in Brothers was a direct response to specifically cases. As set forth above, the Assembly Memorandum in Support of FAPA does the same.
The First Department's retroactivity analysis of section 7 of FAPA (codified at CPLR 213 [b]) which is not at issue on this motion before this Court is to like effect (Genovese v Nationstar Mtge. LLC, 223 AD3d 37 [1st Dept 2023] [determining retroactivity without consideration of possible constitutional challenges]; see also, People v Trump, 217 AD3d 609 [2023] [retroactive application of changes to the applicable statute of limitations to address an injustice is appropriate]).
Although this Court does not hold that the four Brothers factors are the only factors to consider, when legislation meets all four of them, a trial court must follow the Court of Appeals precedent and apply the enacted statute of limitations change retroactively (Mountain View Coach Lines, Inc. v Storms, 102 AD2d 663 [2d Dept 1984] [setting forth the seemingly beyond citation proposition that lower courts must follow Court of Appeals precedent]) notwithstanding that, as plaintiff argues, "statutes are generally applies prospectively in the absence of express or necessarily implied language allowing retroactive effect" (Dorfman v Leidner, 76 NY2d 956, 959 [1990]).
Therefore, this Court holds that both sections 6 and 8 of FAPA, now codified at CPLR 205-a and CPLR 3217 (e) apply retroactively. Like the Brothers court, this Court next addresses the constitutional challenges to retroactive application.
D. Constitutionality of Retroactive Application
Plaintiff correctly claims that the retroactive application of FAPA affects its due process rights. The first step in the constitutionality analysis is to identify the right at issue. This Court parts with some trial court decisions is that rather than finding the retroactive application unconstitutional, this Court holds that retroactively applying FAPA is constitutional, provided that no court applies FAPA's shortened statute to a plaintiff until that plaintiff has (or had) a reasonable time to sue after FAPA became effective. In somewhat colloquial terms, this Court's holding is "constitutional, but," instead of "unconstitutional." The fundamental reason that this Court adopts the holding it does is because the binding guidance from the Court of Appeals and the United States Supreme Court in a statute of limitations shortening case directs doing so.
The Court of Appeals held that "[a] potential litigant has no vested interest in, or right to, a specific limitations period" (Brothers, 95 NY2d at 300). Moreover, the Brotherscourt acknowledged that "statutes of limitations affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect" (Terry v Anderson, 95 US 628, 632-633 [1877]). Thus, so much of plaintiff's arguments that bemoan the unconstitutionality of the sudden taking of plaintiff's rights are misplaced. Likewise, defendant's insistence that FAPA merely reset the law to what it was and did not change anything are equally misplaced. FAPA shortened the statute of limitations and affected this plaintiff's existing rights. Therefore, this Court holds FAPA constitutional, but the reasonable period Terry and Brothers each hold is required must be judicially determined, first by reference to the legislation, and then, if there be no legislative determination, by judicial fiat because "the legislature is primarily the judge [of what is reasonable]; and we cannot overrule the decision of that department of the [*7]government, unless a palpable error has been committed" (Terry, 95 US at 634).
Based on Terry, the Brotherscourt, wrote, "[w]here, as here, . . . there is no legislatively prescribed grace period, a court may uphold the constitutional validity of the retrospective application of the new statute by interpreting it as authorizing suits upon otherwise time-barred claims within a reasonable time after the statute's effective date" (Brothers, 95 NY2d at 301). This language requires an explanation of the verb "may," in the Brothers language, "a court may." Inconceivable is that the Court of Appeal would use "may" to mean that a court has an option. The obvious chaos of allowing one trial court to declare a law constitutional but allowing a second to declare is repugnant could not possibly be what the Brotherscourt means to unleash. Instead, the seemingly often overlooked meaning of "may" as the Brotherscourt used it is "has the power and authority" (see, e.g., Family Court Act § 451 [a] [a court "may" modify an order of support]).
On this binding precedent from the highest courts in each of this state and the United States, this Court holds that FAPA must, based on a judicial determination, permit plaintiffs a reasonable post-effectiveness period in which to commence an action. What that reasonable time is, this Court leaves for another day and case. Here, by commencing this action before FAPA's effective date, this plaintiff, a fortiori, commenced the action within a reasonable time after effectiveness. Any other interpretation would, as plaintiff correctly argues, be an absurd interpretation of the law (Maldovan v County of Erie, 39 NY3d 166 [2022]).
Therefore, defendant's motion to dismiss is denied. 
II. Plaintiff's Motion for Leave to Enter a Default Judgment
Plaintiff has sought leave to enter a default judgment against the New York State Department of Taxation and Finance (DTF). Defendant opposes the motion claiming that defendant owes nothing to DTF. Plaintiff has complied with CPLR 3215 and is entitled to the leave it requests. Defendant's argument ties to the distribution of the monies post-auction and is not properly raised here.
Dated :April 29, 2024
Riverhead, New York
E N T E R
Hon. Aletha V. Fields, AJSC

Footnotes

Footnote 1:Here and elsewhere in this order, this Court takes judicial notice of certain efiled documents in one or more of the other three foreclosure actions. Doing so without request is permitted (Guide to NY Evid rule 2.01 [3], Judicial Notice of Facts). The sorts of items of which this Court takes judicial notice are proper subjects of judicial notice (Guide to NY Evid rule 2.01 [2] [b], [c]). The parties have their rights after judicial notice has been taken (Guide to NY Evid rule 2.01 [4]).

Footnote 2:Hereafter, FAPA. 

Footnote 3:Plaintiff does not argue that any tolls to the statute of limitations apply in this action.

Footnote 4:Neither plaintiff nor defendant in reply cites any case, leading this Court to believe the question to be one of first impression. Therefore, clarity on this holding is essential. This Court makes the determination as part of its duty to ascertain what provisions of FAPA are truly at issue here because certainly the whole of FAPA is not.

Footnote 5:The parties do not dispute that a six-year statute of limitations applies to this action, so this Court operates from that premise, but does not make any finding or holding regarding the relevant statute of limitations.